**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

STATE OF NEW JERSEY and TOWNSHIP OF ROXBURY,

        Plaintiffs,

    v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

        Defendants.

Hon. Jamel K. Semper, U.S.D.J.
Hon. James B. Clark, U.S.M.J.

Civil Action No.: 26-02884

---

**DECLARATION OF PATRICIA INGELIDO**

I, Patricia Ingelido, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. I have personal knowledge of the facts stated herein, including knowledge based on my experience and information provided to me. If called as a witness, I could and would testify competently to what is set forth below.

2.      I am the Director of the Division of Water Supply & Geoscience (DWSG) for the New Jersey Department of Environmental Protection (NJDEP). I have been employed with NJDEP for 26 years, and have held the position of Director from 2021 to present. Prior to my role as Director, I held the position of Assistant Director in the Division of Water Supply and Geoscience beginning in 2018. Previously in my career I worked in the Division of Water Monitoring and Standards for over 10 years with a focus on watershed assessment, planning, and restoration; and water quality modeling and assessment. As Director, I am responsible for overseeing the Division's

1

regulatory programs, which administer the New Jersey Safe Drinking Water Act (NJSDWA) Rules (N.J. Ann. Code § 7:10) and the Water Supply Allocation Permits Rules (N.J. Ann. Code § 7:19). These regulatory programs include primacy responsibilities for the Federal Safe Drinking Water Act as well as the New Jersey Geological & Water Survey, which evaluates water availability, and the hydrogeologic resources of the state.

3.      I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction in the above captioned action.

4.      I am fully familiar with the facts stated in this declaration, which are based on my personal knowledge and documents within the possession of NJDEP that have been made available to me.

**The Importance of Water System Capacity**

5.      Pursuant to the New Jersey Water Supply Management Act (N.J. Stat. Ann. § 58:1A-1 *et seq.*), NJDEP is empowered to manage the State's water resources, which are recognized as a public asset held in trust for its citizens, and which are essential to health, safety, and economic and public welfare. To ensure that adequate water is available for all, the water resources of the State and any water brought into the State must be planned for and managed as a common resource. N.J. Stat. Ann. § 58:1A-2.

6.      New Jersey public water systems that divert water in excess of 100,000 gallons per day must obtain a Water Allocation Permit (N.J Admin. Code § 7:19) from NJDEP authorizing them to access water sources, such as through a groundwater well or diversion of surface water. NJDEP issues these 10-year permits as part of its vital permitting, monitoring, and inspection programs aimed at responsibly managing the State's water resources and planning for emergencies and future water needs. N.J. Stat. Ann. § 58:1A-2.

2

7.      NJDEP requires that public water systems maintain "firm capacity," which means adequate pumping equipment and/or treatment capacity to meet projected peak daily demand when the system's "largest pumping or treatment unit is out of service." N.J. Admin. Code § 7:10-11.4. Under NJSDWA Rules, anticipated peak daily demand for a proposed project is approximated by tripling average daily demand. *See* N.J. Admin. Code § 7:10-11.5(f); N.J. Admin. Code § 7:10-12.6. Average daily demand for a proposed project is estimated using a table that sets out average daily water demand for various types of establishments. *See* N.J. Admin. Code § 7:10-12.6 (Table 1). When estimating peak demand from existing users of the system, NJDEP considers the actual peak demand that the system experienced during the previous years, based on historical demand data.

8.      NJDEP requires that water systems be designed to maintain firm capacity to meet peak demand to safeguard the stability of New Jersey's water systems given fluctuations in demand and source water availability. Demand for water varies throughout the day and season to season. A water system must have capacity to meet the greatest amount of demand that the system experiences. Water source availability varies as well. For example, a well could become contaminated, or a pump could malfunction, rendering that particular water source unavailable. A water system must have the capacity to meet the peak demand that it experiences even when such circumstances render part of its water supply inaccessible.

9.      Ensuring that a water system has firm capacity to meet peak demand is a matter of public health and safety. Exceeding the system capacity creates a substantial risk of reduced water pressure and reliability for users, including impaired flows needed for suppressing fires. State regulations require that water mains be designed to maintain a minimum water pressure of 20

3

pounds per square inch (psi). *See* N.J. Admin. Code § 7:10-11.10. Water pressure below that level creates serious risks of water contamination, triggering "boil water" advisories.

10.    A water system could increase its firm capacity to meet peak demand by developing new water sources, such as by drilling a new groundwater well, but this requires obtaining various construction permits, *see* N.J. Admin. Code § 7:9D (well construction permitting); *id.* § 7:10-11 (public water construction permitting), and may also require seeking approval from NJDEP to modify the water system's Water Allocation Permit.

**Lack of Water System Capacity to Meet Detention Facility Projected Water Demand**

11.    The warehouse located at 1879 Route 46 (the "Roxbury Warehouse") is connected to the Roxbury Township Water Department. The Roxbury Water Department owns and operates three municipal water supply distribution systems for the delivery of potable water to service connections within the township.

12.    Potable water to the Roxbury Warehouse is currently supplied by Roxbury's Skyview System, a water system that can access its water from three active wells (a fourth well is currently offline), and from bulk water purchased from the Morris County Municipal Utilities Authority (MCMUA) and from the New Jersey American-Roxbury system. Water from each of these sources (from Skyview's wells, MCMUA, and New Jersey American-Roxbury), flows through the Skyview System and out to that system's users through its distribution infrastructure.

13.    The Skyview System currently provides drinking water to over 1,500 service connections, serving approximately 4,500 persons. As the primary or only public water system servicing many households, maintaining the integrity of this system is critical.

14.    Based on the most recent data submitted to NJDEP by the Roxbury Water Department, the Skyview System has three active wells, with assigned pump/production capacities

totaling 281,000 gallons per day. If the largest well is out of service, this drops to 144,000 gallons per day. The Skyview System also has contracts to receive 625,000 gallons per day of bulk water purchased from MCMUA and New Jersey American-Roxbury. The Skyview System's "firm capacity" is therefore 769,000 gallons per day, the sum of the capacity from its wells if the largest source is out of service in addition to daily bulk water purchased. *See* N.J. Admin. Code § 7:10-11.4.

15.     In accordance with NJDEP firm capacity calculations, existing peak demand on the Skyview System is 648,000 gallons per day. This is the average daily demand from the month during which water demand was highest in the last five years. During the last five years, the Skyview System experienced the greatest water demand in July 2025, during which 20,087,000 gallons were demanded from the system, or 648,000 gallons per day on average.

16.     Given the Skyview System's existing peak demand of 648,000 gallons per day and its firm capacity of 769,000 gallons per day, the Skyview System only has surplus capacity to meet an additional peak daily demand of 121,000 gallons per day (*i.e.*, the system has 121,000 gallons per day of "firm capacity surplus"). That means that the system can only accept an additional demand of 121,000 gallons per day before water availability for other Skyview System customers is threatened.

17.     If the Skyview System were to activate its fourth well, which is currently not operational, the system's available firm capacity surplus would increase by about 94,000 gallons of water per day.

18.     In the site plan approval issued by Roxbury Township in 2022, the Township estimated the daily water demand for the Roxbury Warehouse to be 12,000 gallons per day, based

on 245 employees and 47,000 square feet of office space with no one residing in the building overnight.

19. Converting the Roxbury Warehouse into a detention facility housing up to 1,500 detainees would significantly increase its demand for water from the Skyview System.

20. As noted above, NJDEP calculates water demand for development projects by applying average daily water demand estimates based on the type of development. *See* N.J. Admin. Code § 7:10-12.6 (Table 1). While the NJSDWA Rules do not have a separate category for "detention facilities," NJDEP's practice is to estimate the water required to serve correctional facilities at 125 gallons per detainee per day. This is similar to the NJSDWA Rule for estimating the water needs of a "health care institution other than a hospital," *see id.* § 7:10-12.6 (Table 1, row 13), and appropriate for an institution that has a 24-hour live-in population that has kitchen, laundry, and shower demands.

21. Applying this estimate to a detention facility designed to house 1,500 detainees, water supply needs for the detainees alone would be 1,500 detainees x 125 gallons per detainee = 187,500 gallons per day. Compared to the original estimated water needs for the warehouse of 12,000 gallons per day, this amounts to over a fifteen-fold increase.

22. This fifteen-fold increase does not include additional potable water demands that would certainly come from staffing the facility with 24/7 support staff. The NJSDWA Rules estimate the average daily water requirements for staff at industrial facilities to be 25 gallons per day per employee working an 8-hour shift. *See* N.J. Admin. Code § 7:10-12.6 (Table 1, row 15).

23. I have been advised that Defendants have expressed their intention to staff the planned detention facility with two 8-hour day shifts, staffed by 400 employees each, and one 8-hour night shift, staffed by 200 employees. Assuming that is accurate, given the projected

employee count of 800 employees working an eight-hour day shift and 200 employees working an eight-hour night shift, this would amount to an additional 25,000 gallons per day. This would bring the total average daily water requirements for staff and detainees to 212,500 gallons per day.

24.     As explained above, anticipated peak daily water demand is calculated as three times the average daily demand. *See* N.J. Admin. Code § 7:10-11.5(f)(3). Based on an estimated average daily demand for the detention facility of 212,500 gallons per day, the projected total peak daily demand is 637,500 gallons per day.

25.     As noted above, the Skyview System only has 121,000 gallons per day of surplus capacity. Consequently, the Skyview System lacks sufficient available firm capacity to meet the Roxbury Warehouse's projected peak demand of 637,500 gallons per day. Indeed, the Skyview System does not even have sufficient available firm capacity to meet the Roxbury Warehouse's projected *average* water demand of 212,500 gallons per day.

26.     The projected water demand of Defendants' planned detention facility would exceed the Skyview System's surplus firm capacity even if the facility had no staff and only 323 detainees ([323 detainees x 125 gallons per detainee per day x peaking factor of 3] > 121,000 gallons per day of surplus firm capacity).

27.     Even if the Skyview System were to activate its fourth well, adding approximately 94,000 gallons per day of capacity to the system, the system would still have insufficient capacity to accommodate the increased demand of a 1,500-detainee facility staffed with 1,000 daily shift employees.

28.     Indeed, the projected water demand of Defendants' planned detention facility would exceed the Skyview System's surplus firm capacity even if the fourth well were online and the facility had no staff and only 574 detainees ([574 detainees x 125 gallons per detainee per day

x peaking factor of 3] > [121,000 gallons per day of surplus firm capacity + 94,000 gallons per day from the fourth well]).

29.    And even assuming that all of the Skyview System's water sources are always fully available (contrary to reality and best practices), the Skyview System still would not have sufficient capacity to meet the projected peak daily demand of 637,500 gallons per day for a 1,500-detainee detention facility staffed with 1,000 daily shift employees

30.    Indeed, the projected water demand of Defendants' planned detention facility would exceed the Skyview System's surplus firm capacity even if the fourth well were online, the largest source was considered, and the facility had no staff and only 939 detainees ([939 detainees x 125 gallons per detainee per day x peaking factor of 3] > [121,000 gallons per day of surplus firm capacity + 94,000 gallons per day from the fourth well + 137,000 from largest well]).

31.    Operation of the Roxbury Warehouse as a mass detention facility of up to 1,500 detainees would cause estimated peak daily demand on the Skyview System to exceed its firm capacity. This would give rise to a very high risk that other households that rely on the Skyview System will, during periods of peak demand, experience a loss of water pressure (which carries with it a significant risk of water contamination) or even a complete loss of water supply. Indeed, because the Skyview System does not even have sufficient available firm capacity to meet the Roxbury Warehouse's projected *average* demand, there is a significant risk that other households that rely on the Skyview System will experience a loss of water pressure even during periods of average water demand.

32.    Reduced pressure and unreliable water availability in turn risk impacting local emergency services that rely on water from the Skyview System, creating a public safety risk. For example, if the fire department needs to utilize hydrants to suppress a fire and those hydrants have

low water pressure (or even worse, no water at all) on account of the Skyview System being overburdened, fire suppression services will be compromised and lives could be lost.

33.    Further, once the estimated peak water demand on a water system exceeds its firm capacity, NJDEP would be unable to approve any permits to supply new customers of the Skyview System, which would impact the development of any other project that would connect to the Skyview System. This includes other business or residential development. Thus, by consuming all remaining firm capacity of the Skyview System, DHS's operation of the Roxbury Warehouse as a mass detention facility would effectively prevent any new development connected to the Skyview System.

### Challenges to Increasing a Water System's Capacity

34.    A water system could increase its capacity through infrastructure projects that develop new water sources, such as the drilling of new groundwater wells. These sorts of projects require regulatory approval by NJDEP in the form of an approved modification to a water system's Water Allocation Permit, and various construction permits. *See* N.J. Admin. Code § 7:9D (well construction permitting); *id.* § 7:10-11 (public water construction permitting).

35.    To secure a modification of a Water Allocation Permit that allows the development of new water sources, a water system must provide NJDEP with extensive technical documentation tailored to the water source at issue. For groundwater extraction, applicants must provide "a discussion of the geology, hydrogeology, and the expected impacts of the diversion both on the resource and on other users of that resource." N.J. Admin. Code § 7:19-2.2. New wells or increased capacity require hydrogeologic testing and detailed reports on the results thereof to determine whether the water can sustainably be delivered to a given public water system. *See* N.J. Admin. Code § 7:19-2.2.

9

36.    Because water is a public resource that must be carefully managed to ensure availability for all, NJDEP carefully scrutinizes requested modifications to a Water Allocation Permit to develop new water sources. NJDEP decides whether to grant such a modification based on water availability, geography, and potential impact to other users, among other things. If NJDEP determines that the water system's proposal will accelerate depletion of underground water aquifers, diminish nearby wells, or alter groundwater flow in ways that degrade water quality and quantity, it will not grant the modification. Because of the location of the Skyview system, features of the subwatershed from which water would be drawn, and the geographical layout of the area, there would be many obstacles to approving such a proposal for the Skyview System.

37. This regulatory review process, once a submission is made to NJDEP, typically takes at least one year. That does not include the timeline for designing, constructing, and testing the necessary infrastructure to physically expand the system, which would typically take three to five years. Other than by developing a new water source via an infrastructure project as described above, a water system can theoretically increase its capacity by securing additional water from a bulk water supplier. However, this will only be possible if the bulk water supplier itself has excess available water supply that is not committed to other water systems. In addition, purchasing additional water may not be possible because the physical limitations of the existing interconnections between the bulk water supplier and the water system may not allow the supplier to convey additional water to the system.

### Inadequate Alternatives To Burdening Existing Water Systems

38.    Transporting potable water via trucks to the warehouse would require the construction of new water infrastructure (such as interconnections, backflow prevention, and fire suppression) for which permits would be required, and would otherwise run afoul of state laws

governing bulk water transfers. In order to get water from trucks to the warehouse's faucets, bathrooms, kitchens, and laundry rooms, Defendants would need to construct a new water storage and distribution system throughout the warehouse. This new system could not safely be connected to the warehouse's existing infrastructure because its connection to the Skyview System creates the potential for contaminated backflow, specifically due to the potential for water from an unapproved supply to contaminate a public water system. Instead, it would have to be its own, independent water system.

39.    Separately, providing potable water to the facility constitutes a bulk purchase system under the New Jersey Safe Drinking Water Act Rules, N.J. Admin. Code § 7:10 *et seq*. These rules only allow for bulk water purchases (other than via approved interconnections between public water systems, such as those between the Skyview System and MCMUA) in the event of an emergency. *See* N.J. Admin. Code § 7:10-2.3. On-site storage of potable water by an individual facility rather than a public water system poses a significant public health risk due to the risk of contamination. These systems are temporary and generally not capable of serving large populations on a long-term basis, which is why New Jersey only utilizes them in emergency situations where potable water resources have been compromised.

40.    Even setting aside these legal requirements and public health concerns, routinely transporting potable water for a large resident population is impractical and inadequate to serve the needs of detainees. Most standard on-road water trucks hold between 2,000 and 6,000 gallons of water. Satisfying the needs of a 1,500-detainee population with our conservative estimate of their daily needs (187,500 gallons per day) would require 32 to 94 trucks delivering water to the facility per day.

**Importance of Highlands Region Water Sources**

41.      Nearly all the Highlands region population relies on groundwater as its primary drinking water supply. In 2008, it was estimated that every day, over 170 million gallons of water are withdrawn from highlands aquifers.

42.      More than 70% of New Jersey residents get some or all of their drinking water from the Highlands. Unauthorized withdrawals from aquifers within the Highlands Region risks impacting the availability of drinking water for residents that rely on the region for their drinking water.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 7th day of April, 2026, in Trenton, New Jersey.

_____
Patricia Ingelido

12