

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ  08625-0080

MIKIE SHERRILL
*Governor*

DR. DALE G. CALDWELL
*Lt. Governor*

JENNIFER DAVENPORT
*Attorney General*

JEREMY M. FEIGENBAUM
*Solicitor General*

May 5, 2026

**<u>VIA ECF</u>**
Honorable Jamel K. Semper
Honorable James B. Clark, III
U.S. District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

**Re:   *State of New Jersey et al. v. U.S. Immigration & Customs Enforcement et al.*, Civil Action No. 26-02884 (JKS) (JBC)**

Dear Judges Semper and Clark:

Plaintiffs respectfully request leave to take brief, two-hour expedited depositions Andrew J. DeGregorio and Shawn L. Byers, two Department of Homeland Security (DHS) employees who submitted declarations in support of DHS's opposition to Plaintiffs' motion for a preliminary injunction.  *See generally* ECF No. 26-1 (DeGregorio Decl.); ECF No. 26-2 (Byers Decl.). These depositions are necessary to address key factual issues pertinent to Plaintiffs' pending motion: the scope and timing of construction activities that DHS will engage in to convert the Roxbury Warehouse into a mass immigration detention center. Because Plaintiffs' motion is scheduled for argument on May 12, Plaintiffs respectfully request an order compelling DHS to present DeGregorio and Byers for brief depositions by May 11.



HUGHES JUSTICE COMPLEX · TELEPHONE: (609)292-4925: FAX: (609)292-3508
*New Jersey is an Equal Opportunity Employer · Printed on Recycled Paper and Recyclable*

Plaintiffs attempted to avert the need for this urgent request by repeatedly seeking, since the filing of DHS's opposition brief, assurances from the agency regarding the activities it will engage in at the Warehouse site. Despite DHS's counsel indicating that the agency would respond to Plaintiffs' inquiries before today's deadline for Plaintiffs to file their reply brief, the agency has not done so. Pursuant to Local Rule 37.1, Plaintiffs have conferred with counsel for Defendants on this request for expedited discovery, and counsel has advised that Defendants oppose the request. Given the time sensitivity of this matter, Plaintiffs respectfully request that the Court order Defendants to submit any response by May 6, 2026 and conduct any informal argument on this request on May 7, 2026.

Expedited depositions are appropriate when they would aid in resolving issues pending before a Court on a preliminary injunction motion. Federal Rule of Civil Procedure 26(d)(1) gives this Court broad authority to grant leave for expedited discovery prior to the parties' Rule 26(f) conference. A "reasonableness" test typically governs whether expedited discovery is appropriate: courts consider "the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *City of Hollywood Police Officers' Ret. Sys. v. Woods*, No. 25-cv-16633, 2025 WL 3764906, at *2 (D.N.J. Dec. 30, 2025). In practice, that reasonableness standard means that expedited discovery will typically be allowed where it is narrowly helpful to resolve a pending preliminary injunction. *See, e.g.*, *Nest Int'l, Inc. v. Balzamo*, No. 12-cv-2087, 2012 WL 1584609, at *2 (D.N.J. May 3, 2012) ("The Court finds good cause to order at least some expedited discovery, as it appears reasonably necessary to enable this Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing."); *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-cv-465, 2011 WL 4478477, at *6-7 (D. Del. Sept. 26, 2011) (allowing expedited discovery "insofar as that discovery relates to disputed facts at issue regarding Plaintiff's P.I. motion," especially where case was "likely to be streamlined and proceed more efficiently if targeted, expedited discovery proceeds"). That can be particularly so where expedited discovery will shed light on the scope of irreparable harm that plaintiffs face from the federal government, which can be critical for a preliminary injunction even if distinct from the merits. *See AFL-CIO v. Dep't of Labor*, 349 F.R.D. 243, 250-53 (D.D.C. 2025) (allowing expedited discovery where preliminary injunction briefing schedule was set, discovery focused on irreparable harm, plaintiffs tailored scope of depositions to those issues, and no motion to dismiss was pending). Accordingly, "the need for expedited discovery," *Hollywood*, 2025 WL 3764906, at *2, is clear from the degree to which the discovery will help the Court "judge the parties' interests" at the

upcoming preliminary injunction hearing, *Nest Int'l*, 2012 WL 1584609, at *2, and sufficient to permit expedited depositions.

Here, expedited discovery is necessary to probe DHS's arguments on standing and irreparable harm. The agency argues that Plaintiffs cannot establish either because warehouse conversion activities are not imminent, noting that DHS will undertake "further analysis" before finalizing construction and operation of a detention center. ECF No. 26 (Dfs. Br.) at 8. Even if DHS really were committed to not proceeding with construction until DHS issues an EA, that argument would be wrong because DHS has made clear that it fully intends to move forward quickly with establishing a detention center, and any such facility will impose substantial harms on the Plaintiffs due to local infrastructure limitations. *See* Pls.' Reply at 3-5. But regardless, the argument's premise is dubious: DHS has given shifting explanations and incomplete information regarding the construction activities it intends to engage in before completing any "further analysis." Thus, before the Court can credit the factual basis for DHS's argument, Plaintiffs must be given an opportunity to seek clarity on the nature and timing of DHS's construction and operation plans for the facility. Only a compelled deposition will enable Plaintiffs and the Court to assess the factual basis for DHS's argument.

DHS's representations regarding its plans for the Roxbury Warehouse have zig-zagged over the past two months, with its most recent filings painting an unclear picture. In a meeting with Roxbury officials on March 10, 2026, DHS stated that it would proceed immediately with warehouse conversion, awarding a construction contract by the end of March and then undertaking renovations and being fully operational within 90 days. ECF No. 10-7 (Murphy Decl.) at 15-16. Then, after Plaintiffs filed their complaint and reached out to DHS counsel to confer about the need for an emergency TRO motion, the agency changed its tune: it provided assurances through counsel that it would not undertake construction activities until May 28 at the earliest and that in the meantime, it would at most enter into a caretaker contract with a vendor to provide site security and certain maintenance services. *See* ECF No. 30-1 (Drecker-Waxman Decl.), Exhibit 1.

In its opposition papers, DHS shifted gears again, now insisting that it will move forward with significant renovations before entering into a construction contract, including at minimum "demolishing drywall and adding communications wiring and workstations" and "reconfigur[ing] the office space in the warehouse." Byers Decl. ¶ 13; *see also* DeGregorio Decl. ¶ 9. The declarations also suggest that other, undisclosed work may take place, noting that office space reconfiguration "would

be *mainly* drywall demolition and installation of communications wiring and workstations," DeGregorio Decl. ¶ 9 (emphasis added), but failing to identify what other reconfiguration activities are contemplated.  And while unclear, it appears ICE may undertake these tasks "in the next few weeks," Byers Decl. ¶ 13, and in any event, before caretaker or construction contracts are executed, *id*. ¶ 14—contrary to the agency's earlier representations. Even more confusing, DHS's brief argues that it will conduct an Environmental Assessment (EA) regarding the impacts of retrofitting the facility "before construction to retrofit the facility for housing detainees begins," Dfs. Br. at 8, while simultaneously acknowledging that it will engage in retrofitting the interior of the warehouse *before* the EA is concluded. *See id.* at 5; Byers Decl. ¶¶ 13-14.  And apart from these inconsistencies, DHS's declarations leave key questions related to DHS's timing argument unanswered:  When will the EA be conducted and when will it conclude?  What is the scope of internal retrofitting activities and the precise timeline for completing them?

To be sure, Plaintiffs have spent the past 10 days seeking clarity from DHS about whether it will commit to deferring all construction activities—including internal demolition and reconfiguration—until after the EA that it now says it will conduct.[1] But DHS has not responded to multiple inquiries. Plaintiffs therefore remain at a loss as to what construction activities DHS will take and when. And answers to those questions are directly relevant to the credibility of the factual assertions underpinning DHS's standing and irreparable harm argument—that injuries to Plaintiffs from construction and operation of the warehouse are not imminent.

In addition to the clear relevance and usefulness of the requested testimony, no other factor governing expedited discovery requests counsels against allowing the requested depositions. In addition to "the purpose of the request," courts consider "the timing of the request," "whether the discovery sought is narrowly tailored," "the burden on the responding party," and "whether the requested discovery can reasonably be provided on an expedited basis." *Hollywood*, 2025 WL 3764906, at *2; *see also Woodford Eurasia Assets ltd. v. Lottery.com, Inc.*, No. 23-cv-1317, 2023 WL 8005621, at *5 (D. Del. Nov. 17, 2023). As to timing, Plaintiffs' preliminary injunction motion is fully briefed with argument imminent; deferring these depositions until after argument would severely undermine their utility. The depositions of DeGregorio and Byers would be narrowly focused on the retrofitting activities that

---

[1] Indeed, if DHS were willing to make such a commitment, Plaintiffs would be willing to defer consideration of their preliminary injunction motion until after the EA is concluded.

DHS intends to engage in while it conducts a further analysis of the Roxbury Warehouse conversion. And because they would be so limited, Plaintiffs can minimize the burden on the DHS witnesses by limiting each deposition to two hours and conducting them at the witnesses' normal place of business.[2] For the same reason, there is no reason why the depositions cannot take place in advance of the May 12 hearing.

Respectfully submitted,

By:    */s/ Shankar Duraiswamy*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Shankar Duraiswamy
*Counsel for the State of New Jersey*

cc:  Counsel of Record (via ECF)

---

[2] Nor does the administrative posture of DHS's decision-making insulate the agency from deposition discovery. Like in *AFL-CIO*, the key question for expedited discovery is the scope of the decision that the agency has made—that is, the sort of work with which it intends to proceed while the preliminary injunction remains pending—which "impacts the scope of the harm to plaintiffs" 349 F.R.D. at 248. "In such situations, a court may depart from the default APA no-discovery rule." *Id.* (citing *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 360 (D.C. Cir. 2005)); *see also, e.g.*, *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) ("[T]he district court is free to exercise its discretion to permit further discovery 'to ascertain the contours of the precise policy at issue.'"); *see also Am. Littoral Soc'y v. EPA*, 199 F. Supp. 2d 217, 228 (D.N.J. 2002) (extra-record evidence permissible to evaluate jurisdictional questions).