# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY AND TOWNSHIP OF ROXBURY,<br><br>Plaintiffs,<br><br>and<br><br>NETCONG HEIGHTS, LLC<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY; AND TODD M. LYONS, IN HIS OFFICIAL CAPACITY AS SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendants. | Civil Action No. 2:26-cv-02884-JKS-JBC<br><br>Hon. Jamel K. Semper, U.S.D.J.<br>Hon. James B. Clark, III, U.S.M.J. |

## DECLARATION OF MICHAEL GOTTLIEB IN SUPPORT OF MOTION TO INTERVENE

I, Michael Gottlieb, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following statements are true and correct:

### A.   Declarant and NH

1.     I am the co-manager of Netcong Heights LLC ("NH"). I am authorized to make this declaration on NH's behalf.

2.     I have personal knowledge of the facts stated herein, except where a statement is made on information and belief or is based on documents and records. If called as a witness, I could testify competently to these facts.

BE.17294671.5/LAN310-290397

3.     I submit this declaration in support of NH's motion to intervene and to describe NH's property, residents, sewer infrastructure, the agreements governing wastewater conveyance, and the risks described below.

**B.     NH's Property and Residents**

4.     NH is a New Jersey limited liability company that owns and operates a residential apartment complex at 163 Route 46 West, Borough of Netcong, Morris County, New Jersey 07857. The property is identified as Block 45, Lot 1 on the official tax map of the Borough of Netcong. NH's property contains 424 units and is home to nearly 700 residents.

**C.     The Easement and Transmission Agreement**

5.     Attached as **Exhibit A** is a true and correct copy of the recorded sanitary sewer easement, formally titled the Sanitary Sewer Line Easement and Construction and Maintenance Easement, dated August 26, 2021, between NH, as Grantor, and Adler-Roxbury, LLC, as Grantee (the "Easement"). The Easement was recorded on September 10, 2021, in the Morris County Clerk's Office at Book 24211, Page 527 (File No. 2021074063). The Easement concerns a perpetual, non-exclusive sanitary sewer line easement and construction and maintenance easement across NH's property for a sewer line and appurtenances serving the Roxbury Warehouse. The copy attached as Exhibit A is a true and correct copy of the document maintained in NH's business records.

6.     I was personally involved in the negotiations leading to NH's grant of the Easement. During those negotiations, NH and Adler-Roxbury agreed that the use  of the Easement was contingent on Adler-Roxbury securing an agreement with the Borough of Netcong.

7.     The Easement grants Adler-Roxbury, LLC, then the owner of the property commonly known as 1879 Route 46, Roxbury Township, New Jersey, identified as Block 9501,

Lot 1 on the Township of Roxbury tax map (the "Roxbury Warehouse"), a perpetual, non-exclusive sanitary sewer line easement and construction and maintenance easement across NH's property (Block 45, Lot 1, Borough of Netcong) extending approximately 310 linear feet. The Easement permits the installation, construction, replacement, reconstruction, repair, and maintenance of a sanitary sewer line and appurtenances serving the Roxbury Warehouse. The recorded instrument separately describes the sanitary sewer Easement Area as containing 6,890 square feet (0.158 acres) and the Construction and Maintenance Easement Area as containing 7,468 square feet (0.171 acres). To the best of my knowledge and belief, the sanitary sewer line and appurtenances were installed at locations substantially consistent with the easement areas described in the recorded instrument.

8.     Paragraph 4 of the Easement states that the Grantee is responsible for ten percent (10%) of all maintenance, repair, and replacement costs of "the existing Netcong Heights sanitary sewer lines through which the Grantee's sanitary sewer effluence will flow." This provision allocates maintenance, repair, and replacement costs for NH's privately owned sewer infrastructure. The allocation was negotiated by NH and Adler-Roxbury, LLC based on projected relative wastewater flows, together with a premium for NH's grant of the Easement.

9.     Attached as **Exhibit B** is a true and correct copy of the Sewage Transmission Agreement dated December 9, 2021, between the Borough of Netcong and Adler-Roxbury, LLC (the "Transmission Agreement"). The Transmission Agreement governs the conveyance of wastewater from the Roxbury Warehouse through a private sewer system owned by NH and then through the Borough of Netcong's municipal sewer system. The copy attached as Exhibit B is a true and correct copy of the document maintained in NH's business records. The Transmission Agreement satisfied the condition on which NH agreed to grant the Easement.

10.    The Transmission Agreement expressly states, consistent with my knowledge, that wastewater discharge from the Roxbury Warehouse property "requires conveyance through a private sewer system owned by Netcong Heights, LLC" before reaching "the Netcong Municipal Sewer System" and ultimately the Musconetcong Sewerage Authority Sewage Treatment Plant.

11.    The Transmission Agreement establishes the maximum permitted average daily wastewater flow from the Roxbury Warehouse project at 11,700 gallons per day. It requires prior approval from the Borough of Netcong for any expansion or change in the proposed use of the project and provides that the Borough need not grant that approval if the projected wastewater flow exceeds 11,700 gallons per day. It further provides that, under no circumstances, may wastewater flow exceed 11,700 gallons per day without the Borough of Netcong's express written consent. The 11,700-gallon-per-day limit is established by the Transmission Agreement and reflected in NJDEP's 2022 Treatment Works Approval; it is not a limit established by the Easement. Upon information and belief, the NJDEP approval authorized a sewer extension serving the warehouse with a maximum flow of 11,700 gallons per day, based on a 470,444-square-foot warehouse with 280 employees and 47,000 square feet of office space.

## D.    Sewer Conveyance Path

12.    NH is the first identified downstream conveyance point through which wastewater from the Roxbury Warehouse passes before entering the Borough of Netcong's municipal sewer system. Based on the Complaint, the Easement, the Transmission Agreement, and information available to NH, wastewater from the Roxbury Warehouse originates at 1879 Route 46 in Roxbury Township; flows through a sewer extension approximately 310 linear feet long across NH's property within the Easement Area; passes through NH's private sewer system; then enters the

Borough of Netcong's municipal sewer system and ultimately reaches the Musconetcong Sewerage Authority Sewage Treatment Plant.

13.    During construction, I personally observed the sewer pipe being installed through the Easement Area and Adler-Roxbury's pipe being connected to NH's existing private sewer infrastructure.

14.    Upon information and belief, attached as **Exhibit C** is a true and correct copy of relevant excerpts from the operative Complaint, including paragraphs 99 through 103 and the allegations concerning the 11,700-gallon-per-day limit, projected wastewater flow, and sewer capacity. Paragraph 99 identifies NH as a conveyance point for wastewater from the Roxbury Warehouse before it passes through the Borough of Netcong and reaches the Musconetcong Sewerage Authority Sewage Treatment Plant.

> **E.    Wastewater Capacity and Public-Health Risk**

15.    Upon information and belief, if the Roxbury Warehouse were converted into a detention facility housing up to 1,500 detainees, its projected wastewater output would be approximately 187,500 gallons per day—more than fifteen times the 11,700-gallon-per-day limit. This projection appears in the operative Complaint and is described in the supporting record.

16.    Upon information and belief, NH's wastewater flow, based on its mix of one-bedroom and two-bedroom units, is calculated at 72,000 gallons per day. By comparison, the detention facility's projected wastewater flow of 187,500 gallons per day would account for approximately 72% of the total flow through NH's private sanitary sewer system, while NH's wastewater flow would account for approximately 28%. This allocation would nearly invert the existing 90%/10% maintenance-cost-sharing arrangement. Had the detention facility's projected wastewater flow of 187,500 gallons per day been known during my negotiations with Adler-

Roxbury, LLC, it is possible, if not probable, that NH would not have agreed to grant the Easement. At a minimum, if NH had been willing to proceed, it would have required Adler-Roxbury, LLC to bear at least 72% of the maintenance costs based on the relative wastewater flows.

17.    Upon information and belief, gravity sewers are designed to flow partially full. When a gravity sewer becomes overloaded and completely full, it may become a pressurized system, with hydraulic effects both upstream and downstream. Rising water levels can create a risk of raw sewage overflows or backups at locations such as manholes, floor drains, shower drains, sink drains, and toilets.

18.    Upon information and belief, raw sewage flowing into streets or seeping into showers and sinks can spread pathogens and cause illness.

19.    Upon information and belief, and based on information I have learned in connection with my role as NH's co-manager, increased wastewater flow could affect NH's private sewer system because NH is the first identified downstream conveyance point in the path described above. It could cause sewage backups or overflows to manifest through floor drains, shower drains, sink drains, and toilets in NH's residential units and common areas. NH's property contains 424 units and is home to nearly 700 residents.

20.    NH does not take a position on DHS's intended use of the Roxbury Warehouse or on the policy issues underlying this action. NH seeks intervention only to protect its property, its sewer infrastructure, and the health and safety of its residents from the increased wastewater-flow risks described in this declaration.

21.    NH promptly determined to seek intervention in this action because its property and its residents' health and safety would be directly threatened if the warehouse conversion proceeded without adequate protection for the sewer infrastructure running through NH's property.

**F.**      **Procedural History and Timeliness**

22.      Attached as **Exhibit D** is a true and correct copy of the June 29, 2026 Joint Status Report filed at Dkt. No. 42. The Joint Status Report states that "Defendants no longer intend to convert the Roxbury Warehouse into an immigration detention facility and intend to sell the warehouse."

23.      Based on that representation, NH reasonably understood that the threat to its property, sewer infrastructure, and residents was no longer imminent and did not at that time determine that a motion to intervene was necessary.

24.      Attached as **Exhibit E** is a true and correct copy of the July 10, 2026 Status Update filed at Dkt. No. 44. The Status Update states that, on July 8, 2026, DHS officials informed counsel that "upon reconsideration, the agency intends to move forward with plans to consider the retrofitting of the Roxbury Township warehouse facility for use as a detention facility," and that, as of July 10, 2026, "agency deliberations remain ongoing."

25.      On July 12, 2026, NH learned of the United States' reversal of position through an article appearing on NJ.com.

26.      On July 13, 2026, NH contacted Ralph Blakeslee, the Borough Administrator of the Borough of Netcong, to confirm the NJ.com report that the United States had reversed course and intended to proceed with the conversion of the adjoining warehouse. Mr. Blakeslee was initially unaware of the reversal but later confirmed that the United States had advised the Borough that it intended to proceed.

27.      During the week of July 27, 2026, NH communicated with counsel and determined to proceed with this motion to intervene.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August ___13th___, 2026, at ___NETCONG___, New Jersey.

MICHAEL GOTTLIEB
Co-Manager, Netcong Heights LLC

BE.17294671.5/LAN310-290397

# EXHIBIT A

## Morris County Recording Cover Sheet



### Honorable Ann F. Grossi, Esq.
### Morris County Clerk

MORRIS COUNTY, NEW JERSEY
ANN F. GROSSI, COUNTY CLERK
EAS-OR BOOK 24211 PG 527
RECORDED 09/10/2021 11:14:47
FILE NUMBER 2021074063
RCPT #: 1662224; RECD BY: ABedkowski
RECORDING FEES  $220.00

*Official Use Only - Realty Transfer Fee*

*Official Use Only - Barcode*

| | |
|---|---|
| Date of Document:<br>8/26/2021 | Type of Document:<br>Easement |
| First Party Name:<br>Netcong Heights LLC | Second Party Name:<br>Adler-Roxbury, LLC |
| Additional Parties: | |

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | |
|---|---|
| Block: | Lot: |
| Municipality: | |
| Consideration: | |
| Mailing Address of Grantee: | |

| THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOK & PAGE INFORMATION FOR AN ASSIGNMENT, RELEASE, OR SATISFACTION OF A MORTGAGE OR AN AGREEMENT RESPECTING A MORTGAGE | |
|---|---|
| Original Book: | Original Page: |

### MORRIS COUNTY RECORDING COVER SHEET

Please do not detach this page from the original document as it contains important recording information and is part of the permanent record.

WARNING: Information contained on the Recording Cover Sheet must exactly match the information within the attached document or the document will be rejected and returned.

Prepared by:    Alan R. Hammer, Esq.
Brach Eichler LLC

## EASEMENT

THIS GRANT OF EASEMENT made this ___26th___ day of _August_____ 2021, by and between NETCONG HEIGHTS, LLC, a New Jersey Limited Liability Company with an address of c/o Management Office, 1200 Sunnyview Oval, Keasbey, NJ 08832, hereinafter "**Grantor**" and ADLER-ROXBURY, LLC, a New Jersey limited liability company, with an address of 160 Raritan Center Parkway, Unit 20, Edison, New Jersey, 08837 hereinafter "**Grantee**".

## WITNESSETH:

WHEREAS, the Grantor is the fee simple owner of certain property in the Borough of Netcong commonly known as Block 45, Lot 1 on the Tax Map of the Borough of Netcong, County of Morris, State of New Jersey ("**Grantor's Property**"); and

WHEREAS, Grantee is the fee simple owner of property contiguous to Grantor's Property and known as Block 9501, Lot 1 in the Township of Roxbury, Morris County, New Jersey ("**Grantee's Property**"); and

WHEREAS, the Grantee desires to obtain a sanitary sewer line easement and a construction and maintenance easement across a portion Grantor's Property for the benefit of Grantee's Property; and

WHEREAS, the Grantor is desirous of granting to Grantee a sanitary sewer line easement and construction and maintenance easement.

NOW, THEREFORE, in consideration of a sum of **Ten ($10.00) Dollars** and the undertakings herein, Grantor hereby gives and grants and conveys to the Grantee, its successors and assigns, in perpetuity, the following easements subject to the following terms and conditions:

1.      Easement Grant. Grantor hereby gives, grants and conveys to Grantee, its successors and assigns, in perpetuity, a non-exclusive sanitary sewer line easement (the "**Easement**"), for the benefit of Grantee's Property, for the purposes hereinafter set forth, across that portion of the Grantor's Property more particularly described in **Exhibit A** and depicted on **Exhibit B** attached hereto, and made a part hereof (the "**Easement Area**").

2.      Purpose of Easement. The purposes of the aforesaid Easement shall include the right to install, build, replace, reconstruct, repair and maintain a sanitary sewer line and other necessary appurtenances thereto, in and upon, under and through the Easement Area; the right of

BE:11923769.3/ADL046-280073

the Grantee, its agents, servants, employees, contractors and licensees of ingress and egress, in and upon the Easement Area, in perpetuity for said purposes.

3.    Construction and Maintenance Easement.

A.    In addition to the Easement to be granted in accordance with Paragraph 1 above, Grantor hereby gives, grants and conveys to Grantee, its successors and assigns, in perpetuity, a non-exclusive Construction and Maintenance Easement, for the benefit of Grantee's Property, for the purposes hereinafter set forth, across the "Construction and Maintenance Easement Area" described in **Exhibit C** attached hereto, and depicted on **Exhibit B**. The purpose of the Construction and Maintenance Easement shall include the right to conduct construction and maintenance activities within the Construction and Maintenance Easement Area which activities are reasonably required to fulfill the purposes of the Easement granted herein above. Grantor reserves the right to use the Easement Area and the Construction and Maintenance Easement Area to the extent such use does not unreasonably interfere with the Easement and Construction and Maintenance Easement, granted herein.

B.    Access to the Easement and the Construction and Maintenance Easement shall be allowed through the existing internal roadway system on Grantor's Property for construction equipment required to construct the sanitary sewer line and to make repairs within the Easement; provided however, that such access shall not unreasonably interfere with the use, operation and enjoyment of Grantor's Property by Grantor and by tenants, guests, invitees, contractors and/or employees on Grantor's Property. Construction equipment shall include, for example, and not be limited to, a backhoe, dump truck and paving equipment. Prior to access pursuant to this paragraph, Grantee shall provide notice to Grantor in accordance with Paragraph 7 below. Access pursuant to this paragraph shall be exercised subject to all of the obligations of Grantee under this Easement including, but not limited to, Grantee's performance obligations, permit obligations, site restoration obligations and insurance/indemnification obligations.

4.    Maintenance and Repair. Grantee shall be responsible for ten percent (10%) of the cost of all maintenance, repair and replacement costs of the existing Netcong Heights sanitary sewer lines through which the Grantee's sanitary sewer effluence will flow.

5.    Performance. Grantee, at its sole cost and expense, shall perform the work to construct the sanitary sewer line and appurtenances expeditiously and diligently, and in accordance with all applicable Federal, State and local statutes, regulations, ordinances, and standards. Grantee shall conduct the work in a safe, good and workmanlike manner, and in accordance with generally accepted professional engineering and construction industry standards and applicable laws. Grantee and Grantee's representatives shall enter upon and use the Easement Area and the Construction and Maintenance Easement Area only as strictly permitted by the Easement and Construction and Maintenance Easement herein granted. Entry onto the Easement Area and the Construction and Maintenance Easement Area shall be at Grantee's own risk, and Grantee hereby

2

assumes all risk of loss from the Grantee's use of the Easement and Construction and Maintenance Easement. Grantor makes no representation or warranty concerning subsurface or latent conditions In, on, under and upon the Easement Area and the Construction and Maintenance Easement Area.

6.    Safety and Security. Grantee shall be solely responsible for safety and security of the Grantee's materials and equipment during the performance of any work by Grantee on the Easement Area and/or the Construction and Maintenance Easement Area. Grantee shall take all actions and implement all protections necessary to ensure that all actions taken in connection with the work, and the equipment, materials, and substance generated, used or brought into the Easement Area and the Construction and Maintenance Easement Area pose no threat to the safety, or health of persons or the environment, and cause no damage to Grantor's Property, the Easement Area and the Construction and Maintenance Easement Area, Grantor or other persons.

7.    Loss or Damage. Grantor shall not be answerable, accountable or responsible for any loss or damage by fire, abuse, theft or otherwise of the work, part of the work, material or equipment, unless caused by Grantor or its agents. Except as provided in this Easement document, Grantor shall not be answerable, accountable or responsible for any information, documents or similar items to be incorporated into Grantee's work on the Easement Area and/or the Construction and Maintenance Easement Area, Grantee shall obtain the necessary site information for utility mark-outs, as required by Law.

8.    Notice to Access Property. Except In the event of an emergency situation, before entering onto the Easement Area and/or Construction and Maintenance Easement Area, Grantee shall provide Grantor at least ten (10) business days written notice of Grantee's commencement of access to the Easement Area and the Construction and Maintenance Easement Area. The written notice shall be delivered in accordance with Paragraph 14 of this Easement. In the event of any situation which Grantee determines, in its reasonable discretion, is an emergency situation requiring less than ten (10) business days' notice for access, Grantee shall notify Grantor by telephone and by fax mail with sufficient detail regarding the emergency, as well as a description of activities to be performed. Entry on the Easement Area and the Construction and Maintenance Easement Area shall be limited to business days (Monday through Friday, excluding holidays), between the hours of 9:00 a.m. to 5:00 p.m., unless permission is given in writing by Grantor for access during other days or hours.

9.    Grantee Responsibility. Grantee shall be responsible at its sole expense for the installation, use, operation, maintenance, repair and replacement of the sanitary sewer line. If Grantee falls to effect needed repairs and maintenance and such failure: (i) damages the Grantor's Property; (ii) interferes with Grantor's business operations upon the Grantor's Property; or (iii) results in a dangerous condition or a violation of law, Grantor shall notify Grantee of such needed repairs, and if Grantee does not promptly after such notification commence and prosecute such repairs, Grantor shall have the right to repair same. Grantee shall reimburse Grantor promptly after

3

demand for all reasonable costs and expenses incurred by Grantor in connection with any repair work that Grantor performs pursuant to this paragraph.

10.    Permits. Grantee, with the reasonable cooperation of Grantor, but at no expense to Grantor, shall obtain any and all permits which may be required for the work Grantee conducts pursuant to the within Easement and the Construction and Maintenance Easement. Grantor further agrees to cooperate with Grantee, and without any additional cost to Grantor, execute any additional documents, including without limitation, permit applications, which may reasonably be required to effectuate the purpose of this Easement and Construction and Maintenance Easement.

11.    Site Restoration. Grantee agrees, upon completion of each stage of the work contemplated by this Easement, to repair any damage to the Easement Area and the Construction and Maintenance Easement Area resulting from Grantee's work, and to grade the surface of the Easement Area and the Construction and Maintenance Easement Area, to the approximate grade as depicted on any approved plans, to the extent grading is not shown on approved plans, Grantee shall restore the surface of the disturbed property to the approximate grade exhibited prior to said work. In addition, Grantee shall, after each and every exercise by Grantee of the rights set forth in this Easement and Construction and Maintenance Easement, restore the Easement Area and the Construction and Maintenance Easement Area to substantially the condition existing prior to the exercise of such rights by the Grantee.

12.    Insurance. Prior to entering or conducting any work on the Easement Area and the Construction and Maintenance Easement Area, Grantee, its contractors and sub-contractors shall provide to Grantor an insurance Certificate and Endorsement, which shall name Grantor as an additional insured, in a form acceptable to Grantor demonstrating the following minimum coverage:

A.    General Liability of not less than $2,000,000.00 per occurrence for bodily injury;

B.    Personal Injury and Property Damage, combined single limit, and $2,000,000.00 aggregate limit;

C.    Worker's Compensation Coverage pursuant to State Law.

13.    Liens. Grantee shall not allow the work or any other activities undertaken by Grantee's representatives to result In notices, liens, judgments or other encumbrances being filed or recorded against the Easement Area and/or the Construction and Maintenance Easement Area, and Grantee, at its sole cost and expense, shall promptly discharge of record any such lien or encumbrances that are so filed or recorded (including liens for services, labor or materials; provided however, nothing contained herein is intended to, nor shall authorize the filing or recording of such liens nor entitle any person or entity to claim that Grantor authorized that any

4

services, labor or materials be supplied to the Easement Area and/or the Construction and Maintenance Easement Area).

14.     Indemnity. Grantee shall indemnify, defend and hold harmless Grantor from and against any and all claims, demands, causes of action, losses, damages, liabilities, cost and expenses (including reasonable attorneys' fees and disbursements), suffered or incurred by Grantor and arising out of or in connection with (i) Grantee's and/or Grantee's representatives' entry upon the Easement Area and/or the Construction and Maintenance Easement Area, (11) any work or other activities conducted thereon by Grantee or Grantee's representatives, (iii) any liens or encumbrances filed or recorded against the Easement Area and/or the Construction and Maintenance Easement Area as a consequence of the work or any and all other activities undertaken by Grantee or Grantee's representatives and/or (iv) any and all other activities undertaken by Grantee or Grantee's representatives with respect to the Easement Area and/or the Construction and Maintenance Easement Area. This indemnification shall survive termination of this Easement.

15.     Easement Beneficiary.  The Easement and the Construction and Maintenance Easement granted hereby shall be solely for the benefit of Grantee and subsequent owners of all or any portion of Grantee's Property and are not intended to create, and shall not be construed as creating, any rights in or for the benefit of the general public.

16.     Ownership. The Grantor covenants and represents that it is lawfully seized and possessed of the Easement Area and the Construction and Maintenance Easement Area, and it has good and lawful right and title to convey this Easement and the Construction and Maintenance Easement.

17.     Notice. No notice, demand or communication under this Easement shall be effective unless the same is in writing. All notices, demands, or communications under this Easement shall be sent either by personal delivery or nationally recognized overnight carrier or facsimile (with regular mail copy) or certified mail, postage prepaid, return receipt requested, to the following addresses:

If to Grantor:

> Netcong Heights, a NJ General Partnership,
> c/o Management Office
> 1200 Sunnyview Oval
> Keasbey, NJ 08832
> Fax No. 732-738-6986

With a copy to:

5

Ronald L. Shimanowitz, Esq.
Hutt & Shimanowitz, P.C.
459 Amboy Avenue, PO Box 648
Woodbridge, NJ 07095
Fax No. 732-834-0718

Or such other address as Grantor designates by giving notice thereof to Grantee.

If to Grantee:

Adler-Roxbury LLC
160 Raritan Center Parkway
Unit 20
Edison, NJ  08837
Fax No. 973-225-5544

With a copy to:

Alan R. Hammer, Esq.
Brach Eichler LLC
101 Eisenhower Parkway
Roseland, NJ  07069
Fax No. 973-618-5513

Or such other address as Grantee designates by giving notice thereof to Grantor.

18.    Modification. This Easement shall not be modified unless in a writing signed by the parties hereto,

19.    Governing Law. This Easement shall be governed by the laws of the State of New Jersey.

20.    Counterparts. This Easement may be executed in multiple counterparts, each of which shall be deemed to be an original and of equal force and effect.

21.    Entire Agreement. This Easement constitutes the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this agreement shall not be binding on either party except to the extent incorporated in this agreement.

22.    No Waiver. The failure of either party to this Easement to insist on the performance of any of the terms and conditions of this Easement, or the waiver of any breach of any of the terms and conditions of this Easement, shall not be construed as thereafter waiving any such terms and

6

BE:11923769.3/ADL046-280073

conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waive had occurred.

23.    Headings. The paragraph headings/captions contained in this Easement are for reference only for the convenience of the parties. They shall not be deemed to constitute a part of this Easement nor shall they alter or supersede the contents of the paragraphs themselves.

*[Signatures appear on next page.]*

BE:11923769.3/ADL046-280073

IN WITNESS WHEREOF, the parties have executed this Easement as of the date set forth above.

**Grantor**:

NETCONG HEIGHTS LLC, a NJ limited liability company

Name: _Michael Gottlieb_
Title: _Authorized Signatory_

**Grantee**:

ADLER-ROXBURY LLC, a New Jersey limited liability company


By: _____
Name: Josh Adler
Title:   Authorized Signatory

8

IN WITNESS WHEREOF, the parties have executed this Easement as of the date set forth above.

**Grantor**:

NETCONG HEIGHTS, a NJ
General Partnership

_____

Name:
Title:

**Grantee**:

ADLER-ROXBURY LLC, a New
Jersey limited liability company

By: _____
Name: Joshua Adler
Title: Authorized Signatory

8

State of New Jersey      )
                           ) ss.

County of Middlesex      )

On this 26th day of August, 2021, before me personally appeared Michael Gottlieb, to me known and known to me to be the authorized signatory of Netcong Heights, LLC described in and who executed the foregoing instrument and he thereupon acknowledged to me that he executed the same as and for the act and deed of said firm

*Elizabeth Torres*

NOTARY PUBLIC OF NEW JERSEY

Elizabeth Torres
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES   March 12, 2026

State of New Jersey      )
                           ) ss.

County of _____      )

On this _____ day of _____, 2021, before me personally appeared Joshua Adler, to me known and known to me to be the authorized signatory of Adler-Roxbury LLC described in and who executed the foregoing instrument and he thereupon acknowledged to me that he executed the same as and for the act and deed of said firm

_____
NOTARY PUBLIC OF NEW JERSEY

**RECORD & RETURN TO:**

Alan R. Hammer, Esq.
Brach Eichler LLC
101 Eisenhower Parkway
Roseland, NJ  07069

9

BE:11923769.3/ADL046-280073

State of New Jersey            )
                               ) ss.
County of _____            )

On this _____ day of_____, 2021, before me personally appeared
_____to me known and known to me to be a PARTNER of the partnership of
NETCONG HEIGHTS, a New Jersey General Partnership described in and who executed the
foregoing instrument and he thereupon acknowledged to me that he executed the same as and for
the act and deed of said firm

_____
NOTARY PUBLIC OF NEW JERSEY

State of New Jersey            )
                               ) ss.
County of __Middlesex__        )

On this __25th__ day of __August_____, 2021, before me personally appeared Joshua
Adler, to me known and known to me to be the authorized signatory of Adler-Roxbury LLC
described in and who executed the foregoing instrument and he thereupon acknowledged to me
that he executed the same as and for the act and deed of said firm

_____
NOTARY PUBLIC OF NEW JERSEY

**RECORD & RETURN TO:**

Alan R. Hammer, Esq.
Brach Eichler LLC
101 Eisenhower Parkway
Roseland, NJ  07069

CATHERINE VILLARREAL
Commission # 50076368
Notary Public, State of New Jersey
My Commission Expires
February 15, 2023

9

BE:11923769.3/ADL046-280073

# EXHIBIT A

## METES AND BOUNDS DESCRIPTION OF SANITARY SEWER EASEMENT

January 24, 2011                               Project No. 06110

### DESCRIPTION OF SANITARY SEWER EASEMENT
### ACROSS LOT 1 – BLOCK 45
### DEDICATED TO LOT 1 – BLOCK 9501
### BOROUGH OF NETCONG, MORRIS COUNTY, NEW JERSEY

Commencing at a point in the municipal boundary line between the Borough of Netcong and the Township of Roxbury (per Deed Book 2236, page 948), said point being distant N 02°56'43" W, 688.32 feet from a concrete monument found on said municipal boundary line at the southeasterly corner of Lot 1, Block 45, running, thence;

1. S 74°11'47" W, 118.41 feet across Lot 1, Block 45, thence the following five courses across the same;

2. S 51°05'27" W, 209.74 feet, thence;

3. N 38°54'33" W, 20.00 feet, thence;

4. N 51°05'27" E, 213.83 feet, thence;

5. N 74°11'47" E, 97.06 feet, thence;

6. N 52°16'17" E, 35.62 feet to a point in said municipal boundary line, thence;

7. S 02°56'43" E, 34.16 feet along said municipal boundary line to the point or place of beginning.

Containing 6,890 square feet or 0.158 acres of land, more or less.

Subject to any easements, restrictions, or rights that may exist.

The above description is based on a plan entitled "Sewer Easement Plan, Netcong Heights, Block 45, Lot 1, Borough of Netcong, Morris County, New Jersey," prepared by Dykstra Walker Design Group, dated 6/11/10, last revised 1/24/11. The bearings for this description are in accordance with Deed Book 2236, page 948.

Kenneth D. Dykstra, Professional Land Surveyor
New Jersey License No. 24GB03297200

**EXHIBIT B**

**SEWER EASEMENT PLAN**

BE:11923769.3/ADL046-280073



## EXHIBIT C

### METES AND BOUNDS DESCRIPTION OF CONSTRUCTION AND MAINTENANCE EASEMENT

BE:11923769.3/ADL046-280073

January 24, 2011                                     Project No. 06110

## DESCRIPTION OF CONSTRUCTION AND MAINTENANCE EASEMENT
## ACROSS LOT 1 – BLOCK 45
## DEDICATED TO LOT 1 – BLOCK 9501
## BOROUGH OF NETCONG, MORRIS COUNTY, NEW JERSEY

Commencing at a point in the municipal boundary line between the Borough of Netcong and the Township of Roxbury (per Deed Book 2236, page 948), said point being distant N 02°56'43" W, 722.48 feet from a concrete monument found on said municipal boundary line at the southeasterly corner of Lot 1, Block 45, running, thence;. running, thence;

1. S 52°16'17" W, 35.62 feet across Lot 1, Block 45, thence the following eight courses across the same;

2. S 74°11'47" W, 97.06 feet, thence;

3. S 51°05'27" W, 213.83 feet, thence;

4. N 38°54'33" W, 20.00 feet, thence;

5. N 51°05'27" E, 132.71 feet, thence;

6. N 61°54'54" E, 56.62 feet, thence;

7. S 28°31'24" E, 3.22 feet, thence;

8. N 61°28'36" E, 55.75 feet, thence;

9. N 45°23'54" E, 131.64 feet to a point in said municipal boundary line, thence;

10. S 02°56'43" E, 59.34 feet along said municipal boundary line to the point or place of beginning.

Containing 7,468 square feet or 0.171 acres of land, more or less.

Subject to any easements, restrictions, or rights that may exist.

The above description is based on a plan entitled "Sewer Easement Plan, Netcong Heights, Block 45, Lot 1, Borough of Netcong, Morris County, New Jersey," prepared by Dykstra Walker Design Group, dated 6/11/10, last revised

**DYKSTRA WALKER
DESIGN GROUP**

PROJECT NO. 06110
CONSTRUCTION AND
MAINTENANCE EASEMENT
JANUARY 24, 2011
PAGE 2 OF 2

1/24/11. The bearings for this description are in accordance with Deed Book 2236, page 948.

Kenneth D. Dykstra, Professional Land Surveyor
New Jersey License No. 24GB03297200

# EXHIBIT B

SEWAGE TRANSMISSION AGREEMENT

.THIS AGREEMENT, made this 9 day of December, 2021 between;

BOROUGH OF NETCONG
A Municipal Corporation of the
State of New Jersey, with offices
Located at 23 Maple Avenue
Netcong, New Jersey 07857

Hereinafter "Netcong"

And

ADLER ROXBURY, LLC
160 Raritan Center Parkway, Unit 20
Edison, NJ 08837

Hereinafter "Adler" and its Successors and Assigns

WHEREAS, Netcong is a Municipal Corporation of the State of New Jersey and has all rights as a municipality as well as a utility authority in this Agreement; and

WHEREAS, Adler is the owner of property known as Block 9501, Lot 1 (hereinafter the "Property"), 271 Kings Highway, in the Township of Roxbury ("Roxbury"); and

WHEREAS, Adler has received preliminary site plan approval from the Roxbury Township Planning Board via Board Resolution adopted on January 20, 2021 for the construction and operation of a warehouse and office building (hereinafter the "Project") located at the aforementioned property; and

WHEREAS, the Property is anticipated to produce an average daily sewerage flow of no greater than **11,700** gallons per day based on the projected flow criteria outlined in New Jersey Administrative Code 7:14A-23.3; and

1346-001\#624912v1

WHEREAS, the subject Property is within the Musconetcong Sewerage Authority ("MSA") Sewer Service Area, and Adler wishes to have wastewater generated by the Project treated at the MSA Sewerage Treatment Plant. The wastewater generated from this Project would be part of the Roxbury's allocation within the MSA Sewerage Treatment Plant; and

WHEREAS, discharge of wastewater by the Project to the MSA Sewerage Treatment Plant requires conveyance through a private sewer system owned by Netcong Heights, LLC and the Netcong Municipal Sewer System. The private sewer system is located on Block 45 Lot 1 within the Borough of Netcong, and

WHEREAS, Adler will install and maintain all sanitary sewers required to convey wastewater to the private sewer system located on Block 45, Lot 1 within the Borough of Netcong, and

WHEREAS, Adler has obtained an easement from Netcong Heights, a General Partnership to convey wastewater from the Property through Block 45 , Lot 1 within the Borough of Netcong, and

WHEREAS, Adler now seeks permission to convey wastewater through the municipal sanitary sewer system which is owned and maintained by the Borough of Netcong. Wastewater flowing through the Netcong Sewer System shall be subject to an application fee, a connection fee, quarterly transmission fees, and quarterly administrative costs, and

WHEREAS, all wastewater flow from the Adler Project will be metered. The cost to maintain the meter and chamber will be borne by Adler.

NOW, THEREFORE, IN CONSIDERATION of One Dollar ($1.00) and the mutual covenants and agreements contained herein, Netcong and Adler hereby agree as follows:

1.      Netcong agrees to accept sewerage flow from Block 9501, Lot 1 located within the Township of Roxbury. This approval is expressed given based on the preliminary site plan approval from

1346-001\#624912v1

the Roxbury Township Planning Board via Board Resolution adopted on January 20, 2021 for the construction and operation of a warehouse and office building. The maximum permitted average daily wastewater flow from the Project is **11,700** gallons.

2.      Any expansion or change in the proposed use of the Project shall be subject to approval by Netcong. Such approval is not obligated to be granted by Netcong if the projected wastewater flow, based on the projected flow criteria outlined in New Jersey Administrative Code 7:14A-23.3, exceeds an average daily flow of 11,700 gallons.

3.      The average daily wastewater flow from the Project, in accordance with this Agreement, may not exceed an average daily flow of 11,700 gallons per day. Under no circumstances shall the wastewater flow from the Project exceed an average daily flow 11,700 gallons without the express written consent of Netcong. Exceeding of the permitted average daily flow shall be subject to penalties as outlined below.

4.      Adler shall fully comply with the Netcong municipal code 238-5 Use of Sewers and agree to be subject to Netcong Municipal Code 238-8 Violations and Penalties. Adler hereby agrees that the sewerage to be accepted by Netcong shall at no time include any industrial flow as defined by rules, regulations, and agreements with Netcong. Adler shall comply with all MSA rules and regulations for discharge of wastewater to the Sewerage Treatment Plant. Netcong shall have the right to inspect the property for code compliance monitoring and enforcement.

5.      The sewer connection must fully comply with all applicable State, Federal, County and Municipal laws, rules and regulations subject to review and approved by Roxbury and Netcong. Prior to connection into the private sewer system, Adler shall provide a copy of the construction plans to Netcong for review and approval. The construction plans shall incorporate a meter chamber to be installed at the Netcong municipal border.

1346-001\#624912v1

6.      Netcong shall have no responsibility to operate or maintain the private sewer system is located on Block 45, Lot 1.

7.      All costs associated with the sewer connection into the Netcong sewer system shall be solely borne by Adler.

8.      An escrow shall be established and funded by Adler for all of Netcong's legal and engineering work associated with the Project.  Adler shall deposit an initial escrow of $5,000 to be placed in an escrow account to pay for all such legal and engineering work performed by Netcong's professionals, including without limitation inspection work.  Should the escrow balance fall below $1,000, Adler shall replenish the escrow as requested by Netcong.  A minimum maintenance period of two years shall be observed upon completion and approval of all sewer work undertaken by Adler.  Following the maintenance period and payment of all legal and engineering fees due and owing to Netcong's professionals, any monies remaining in escrow shall be returned to Adler with no further escrow obligation in this regard unless there is the need pursuant to this agreement for future legal or engineering oversight and compliance monitoring.

9.      Prior to operation, Adler will furnish Netcong and its Municipal Engineer with a Certification by a Licensed Professional Engineer practicing in the State of New Jersey that all applicable improvements have been installed in accordance with the plans and specifications and all applicable laws, ordinances, rules and regulations.

10.      Adler shall install and maintain a meter to monitor flow from the Project.  Adler shall provide Netcong average and peak flow meter data on a quarterly basis.  Failure to provide flow metering data shall be subject to penalties as outlined below.

11.      As a condition to convey wastewater through the Netcong sewer system, Adler agrees to the following fees:

> **Application Fee:** Adler agrees that it shall pay to an initial application fee of $10,000.00 to Netcong Borough at the signing of this Agreement.

1346-001\#624912v1

**Connection Fee:** Adler agrees to pay Netcong a one-time connection fee of $150,000. The connection fee must be paid in-full prior to the issuance of a building permit.

**Quarterly Transmission Fee:** The Quarterly Transmission Fee shall be based on the actual sewer flows generated by the Project. Wastewater flow from the Project shall be based on the total amount of potable water used measured quarterly by water meter readings. The formula that the parties agree to apply for the Transmission Fee shall be as follows: total gallons per day flowing from the Project (based on water meter readings and projected flows) divided by total gallons per day flowing through the entire Netcong system equals Adler's percentage of use. Quarterly Transmission Fees shall be Adler's percentage of use times the total daily income allocated by Netcong for operation of Netcong's Sanitary Sewer System excepting sewer fees paid to the MSA. Payment shall be made by Adler to Netcong on a quarterly basis upon the receipt of an invoice from Netcong.

Notwithstanding the actual flows or uses, the minimum Quarterly Transmission Fee shall be based on water usage of one-half the permitted allocation. Such will be the minimum usage and applied in the event actual usage falls below one-half the permitted allocation on average on a quarterly basis.

Adler shall keep and maintain permanent records of the volume of wastewater conveyed to Netcong. A copy of any water bills, including water meter readings, shall be provided to Netcong on a quarterly basis. Failure to provide a water bill for billing purposes will result in a sewer user fee being issued based on the projected average daily sewer rate outlined in this agreement. Water bills must be provided 30 days prior to the corresponding billing cycle

If the quarterly average of the water meter readings exceeds 11,700 gallons per day, Adler is required to investigate the reasons for exceeding the maximum sewage flow and immediately correct any problems such inspection might reveal. In the event such limitation is exceeded, then Netcong has the right to increase its maximum billing proportionately along with a penalty provision of 25%. Any and all water meters measuring Non-Sewer Water from the Development shall be serviced and kept in good repair by Adler and shall be available for inspection at any time by Netcong.

**Administration Fee:** An Administration Fee shall be paid on a quarterly basis. The Administrative fee shall be 5% of the Quarterly Transmission Fee.

A sample calculation based on Netcong sewer flows as determined by MSA, anticipated flows from the Project, income from sewer rents allocated to operation of the Netcong Sanitary Sewer System and fees paid to the MSA in 2019 is attached as Exhibit A for use as a guide to the Quarterly Transmission Fee which would be charged to Adler.

12.    Adler hereby agrees to maintain Comprehensive General Liability and Environmental insurance with a minimum limit of liability in the amount of $1,000,000 per occurrence as a combined single limit for bodily injury and property damage and $2,000,000 aggregate for bodily injury and property damage, naming Netcong as an additional insured. The Certificate of Insurance naming Netcong as an additional

1346-001\#624912v1

insured shall be in a form acceptable to Netcong's attorney and must be approved prior to the start of construction of the Adler system. Adler also agrees to maintain a Comprehensive Automobile Liability insurance to cover owned, non-owned, and hired vehicles with a minimum limit of liability in the amount of $1,000,000 per occurrence as a combined single limit for bodily injury and property damage as well as Workers Compensation insurance according to the requirements of the laws of the State of New Jersey.

13.     Adler shall provide copies of the O&M Manual (and any future amendments thereto) to Netcong for review and approval. Adler agrees to comply with all requirements set forth in the O&M Manual. Furthermore, Adler agrees to provide Netcong with copies of the all maintenance logs upon request.

14.     Adler shall submit to the Borough on January 1st of each year, proof of proper calibration of the sewer meter. Said calibration statement shall be provided by an appropriate individual licensed by the State of New Jersey to perform such review. Proof shall be submitted to the Borough Clerk.

15.     Adler, its successors and/or assigns agree that it will be solely responsible to Netcong for the payment of all fees imposed by Netcong are fair and reasonable and shall agree to waive jurisdictional defenses if there are violations, claims, fines or penalties against Adler and its sewer maintenance operation.

16.     All rights, obligations, and liabilities set forth in this Agreement shall be binding upon the the parties and their respective successors and assigns.

17.     By entering into this Agreement, Netcong does not agree to limit itself to the methodology for calculation of fees set forth in N.J.S.A 40:14A-1 et seq.

18.     Adler agrees that it will enter into and maintain in full force and effect agreements with proper officials of the Township of Roxbury to assure Netcong that those persons utilizing the sewerage system have paid and continue to pay the proper fees due to Netcong pursuant to the terms of this Agreement and the agreement between Roxbury and Netcong. In addition, if Adler exceeds an average

1346-001\#624912v1

flow of 11,700 gallons per day, such allocations, as all of the use and allocation from this project, is the responsibility and is an allocation to Roxbury Township.

19.     If any portion of this Agreement shall be deemed or found to be unlawful or enforceable, such provision shall be severable and the balance of the Agreement shall be enforceable in accordance with its terms.

20.     This Agreement is specifically conditioned upon Netcong and Roxbury reaching a satisfactory Agreement to support all of the terms and conditions of this Agreement.

21.     Adler will post an additional separate escrow of $15,000.00 ("Transmission Fee Escrow") and in the event Adler fails to make payment, as to but not limited to, any terms, conditions, fines, penalties, or changes per this Agreement, Netcong may seek necessary collection efforts, including the right to draw upon the Transmission Fee Escrow. This Transmission Fee Escrow shall be continuous throughout the time period of this Agreement and may only be terminated or modified with the approval of Netcong. If the Borough has to draw down on the Transmission Fee Escrow, Adler shall be required to replenish same immediately.

[signature page follows]

1346-001\#624912v1

IN WITTNESS WHEREOF, the parties to this Agreement have caused this Agreement to be authorized by appropriate acts of its respective officers and have further caused this Agreement to be signed on the day and year first above written.

ATTEST:

BOROUGH OF NETCONG

Joseph Nametko, Mayor

ATTEST

ADLER ROXBURY, LLC

By:
Joshua Adler, Member

[acknowledgment page follows]

1346-001\#624912v1

STATE OF NEW JERSEY)

                ) SS:

COUNTY OF MORRIS)

**I CERTIFY** that on _3/21_, ~~2024~~ 2022 _Cynthia Eckert_ personally came before me and this person acknowledged under oath, to my satisfaction, that:

    (a) this person is the Clerk of the Borough of Netcong, in the County of Morris, the corporation named in the attached document,

    (b) this person is the attesting witness to the signing of this document by the proper corporate officer, who is Joseph Nametko, the Mayor of the corporation,

    (c) this document was signed and delivered by the corporation as its voluntary act duly authorized by a proper resolution of its Municipal Council,

    (d) this person knows the proper seal of the corporation, which was affixed to this document, end

    (e) this person signed this proof to attest to the truth of these facts.

Signed and sworn to before me
the date aforesaid.

JENNIFER A. MEEHAN
Notary Public of New Jersey
My Commission Expires May 7, 2023

STATE OF NEW JERSEY)

                ) SS:

COUNTY OF MORRIS   )

**I CERTIFY** that on _3|10_, 2022 Joshua Adler personally came before me and this person acknowledged under oath, to my satisfaction, that:

    (a) this person is the Managing Member of Adler Roxbury, LLC , the limited liability company named in the attached document,

    (b) this person signed, sealed and delivered this document as his act and deed on behalf of Adler Roxbury, LLC, the entity named in this document.,

Signed and sworn to before me
the date aforesaid.

Juanita Grace Toth, Notary
State of NJ - Monmouth County
My commission expires 5/12/2023

1346-001\#624912v1

# EXHIBIT C

Case 2:26-cv-02884-JKS-JBC    Document 49-2    Filed 08/13/26    Page 40 of 48 PageID:
Case 2:26-cv-02884    Document 1    Filed 03/20/26    Page 1 of 50 PageID: 1
1007

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STATE OF NEW JERSEY and TOWNSHIP OF ROXBURY, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and TODD M. LYONS, in his official capacity as Senior Official Performing the Duties of the Director of Immigration and Customs Enforcement, <br><br> Defendants. | Civ. No. <br><br><br><br> **COMPLAINT** |

## COMPLÀINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      The State of New Jersey and the Township of Roxbury come to this Court to seek relief from the unlawful decision of the U.S. Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) to establish a large-scale immigration detention facility in an industrial warehouse in Roxbury (the "Roxbury Warehouse"). In their rush to expand detention capacity across the country, DHS and ICE have flouted bedrock federal statutory mandates with which Congress requires it to comply: the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*; the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*; the Intergovernmental Cooperation Act (ICA), 31 U.S.C. § 6506(c); and the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(g). Any one of these violations requires vacating the

Case 2:26-cv-02884-JKS-JBC    Document 49-2    Filed 08/13/26    Page 41 of 48 PageID:
Case 2:26-cv-02884    Document 1    Filed 03/20/26    Page 27 of 50 PageID: 27
1008

expected impacts of the diversion both on the resource and on other users of that resource." N.J. Admin. Code § 7:19-2.2(c). New wells or increased capacity require hydrogeologic testing and detailed reports on the results thereof to determine whether the water can sustainably be delivered to a given public water system. *See* N.J. Admin. Code § 7:19-2.2.

96.    If Defendants nonetheless convert the Roxbury Warehouse into a detention facility housing up to 1,500 people and draw on the existing Skyview System to provide water for that facility, this would strain an already stressed water system beyond its capabilities.

97.    A large ongoing water withdrawal that was not previously anticipated poses a substantial risk of exceeding the available allocation or system capacity, which could in turn reduce water pressure and reliability for other users, impair flows needed for suppressing fires, accelerate the depletion of underground water aquifers, diminish nearby wells, and alter groundwater flow in ways that degrade water quality and quantity.

98.    *Sewer Systems.* Defendants' plans for the Roxbury Warehouse also create a serious risk of overwhelming the local wastewater conveyance system. Conversion of the warehouse into a mass detention facility would likely increase the sewage output more than fifteen-fold. Such a greatly expanded unplanned ongoing wastewater discharge poses a serious risk of exceeding contractual flow limits and the hydraulic capacity of the conveyance system, thereby causing sewer main backups, overflows at manholes or pump stations, backups through service pipes into upstream properties, and contamination of groundwater and local waterways.

99.    The wastewater flowing from the Roxbury Warehouse is ultimately conveyed through Netcong Heights (an apartment complex), then through the Borough of Netcong, and then flows to the Musconetcong Sewerage Authority Sewage Treatment Plant, which discharges treated

wastewater into the Musconetcong River, a waterway that is held in trust for the benefit of the public.

100.   The most recent water quality management plan for the Roxbury Warehouse site, a Sewage Transmission Agreement between the prior warehouse owners and the Borough of Netcong, and a sanitary sewer agreement between the Borough of Netcong and Township of Roxbury, provide for a wastewater discharge from the Roxbury Warehouse of no more than 11,700 gallons per day. Consistent with these documents, NJDEP issued a Treatment Works Approval in 2022 that authorized the construction and operation of a sewer extension to the warehouse that allows for a maximum flow of 11,700 gallons of wastewater per day based on the identified needs for a 470,444 square foot warehouse with 280 employees and 47,000 square feet of office space.

101.   If the Roxbury Warehouse were converted into a detention facility housing up to 1,500 detainees at a time, its projected wastewater output would balloon to an estimated 187,500 gallons per day—more than 15 times greater than the current 11,700 gallon per day limit.

102.   The Borough of Netcong's existing conveyance system has insufficient capacity to convey the additional anticipated flow from the proposed detention facility.

103.   Wastewater flow from the Roxbury Warehouse that exceeds the capacity of the existing infrastructure poses serious risks of damage to the sewer system and sewage overflows into nearby land, groundwater, and waterways. Indeed, the anticipated fifteen-fold increase in wastewater flow would render the system liable to overflows in at least four discrete locations in the township, resulting in sewage flowing to the stormwater system and ultimately discharging into Lake Musconetcong.

104.   And DHS cannot simply avoid modifying sewage use by trucking wastewater out, as that shortcut would render the warehouse "unfit for human … occupancy" under the local

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY and TOWNSHIP OF ROXBURY, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br><br> Defendants. | Hon. Jamel K. Semper, U.S.D.J. <br><br> Hon. James B. Clark, U.S.M.J. <br><br> Civil Action No.: 26-02884 |

## <u>NOTICE</u>

On June 29, 2026, the parties submitted a joint status report representing that "Defendants no longer intend to convert the Roxbury Warehouse into an immigration detention facility and intend to sell the warehouse." Dkt. No. 42. Counsel for Defendants was authorized to make that representation by authorizing officials within the U.S. Department of Homeland Security (DHS). On July 8, DHS officials informed counsel that upon reconsideration, the agency intends to move forward with plans to consider the retrofitting of the Roxbury Township warehouse facility for use as a detention facility. DHS officials further informed counsel that as of July 10, agency deliberations remain ongoing. Counsel for Plaintiffs and Defendants continue to confer and will submit a joint status report on July 17.

Dated: July 10, 2026

1

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Shaun M. Pettigrew*
SHAUN M. PETTIGREW
Senior Trial Attorney
Natural Resources Section
c/o NOAA, Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
shaun.pettigrew@usdoj.gov
(202) 532-5973

KRYSTAL-ROSE PEREZ
Trial Attorney
Natural Resources Section
150 M Street NE
Washington, DC 20002
krystal-rose.perez@usdoj.gov
(202) 532-3266

*Attorneys for Defendants*

2

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY and TOWNSHIP OF ROXBURY,<br><br>     Plaintiffs,<br><br>    v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>     Defendants. | Hon. Jamel K. Semper, U.S.D.J.<br><br>Hon. James B. Clark, U.S.M.J.<br><br>Civil Action No.: 26-02884 |

## <u>NOTICE</u>

On June 29, 2026, the parties submitted a joint status report representing that "Defendants no longer intend to convert the Roxbury Warehouse into an immigration detention facility and intend to sell the warehouse." Dkt. No. 42. Counsel for Defendants was authorized to make that representation by authorizing officials within the U.S. Department of Homeland Security (DHS). On July 8, DHS officials informed counsel that upon reconsideration, the agency intends to move forward with plans to consider the retrofitting of the Roxbury Township warehouse facility for use as a detention facility. DHS officials further informed counsel that as of July 10, agency deliberations remain ongoing. Counsel for Plaintiffs and Defendants continue to confer and will submit a joint status report on July 17.

Dated: July 10, 2026

1

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Shaun M. Pettigrew*
SHAUN M. PETTIGREW
Senior Trial Attorney
Natural Resources Section
c/o NOAA, Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
shaun.pettigrew@usdoj.gov
(202) 532-5973

KRYSTAL-ROSE PEREZ
Trial Attorney
Natural Resources Section
150 M Street NE
Washington, DC 20002
krystal-rose.perez@usdoj.gov
(202) 532-3266

*Attorneys for Defendants*

2