## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STATE OF NEW JERSEY AND TOWNSHIP OF ROXBURY, | Civil Action No. 2:26-cv-02884-JKS-JBC |
| Plaintiffs, | Hon. Jamel K. Semper, U.S.D.J. |
| and | Hon. James B. Clark, III, U.S.M.J. |
| NETCONG HEIGHTS, LLC, | |
| Plaintiff-Intervenor, | |
| v. | |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY; AND TODD M. LYONS, IN HIS OFFICIAL CAPACITY AS SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT, | |
| Defendants. | |

---

**BRIEF IN SUPPORT OF NETCONG HEIGHTS, LLC'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(a)(2)**

---

**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973-228-5700
Facsimile: 973-228-7852
*Attorneys For Plaintiff-Intervenor, Netcong Heights LLC*

Of Counsel and On the Brief:

    Stuart J. Polkowitz, Esq.(008511992)
    Kenneth A. Porro, Esq. (003351988)

BE.17316639.2/LAN310-290397

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

    A.    The Roxbury Warehouse and the Proposed Detention Facility.......................2

    B.    Netcong Heights LLC 's Sanitary Sewer Easement and Cost-Sharing Obligation................................................................................2

    C.    The Governmental Sewage Transmission Agreement and the 11,700 GPD Flow Cap Limitation.....................................................3

    D.    The Wastewater Conveyance Path Through Netcong Heights LLC 's Property ......................................................................4

    E.    The Projected Fifteen-Fold Increase in Wastewater Flow..............................4

    F.    DHS's Reversal and the Triggering Event for Intervention ...........................5

LEGAL STANDARD...........................................................................................6

LEGAL ARGUMENT..........................................................................................7

    I.    NETCONG HEIGHTS LLC 'S APPLICATION IS TIMELY ..................................................................................7

    II.    NETCONG HEIGHTS LLC  HAS A SUFFICIENT INTEREST IN THIS LITIGATION.....................................................9

    III.    NETCONG HEIGHTS LLC 'S INTEREST WILL BE IMPAIRED WITHOUT INTERVENTION ......................................11

    IV.    THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT NETCONG HEIGHTS LLC 'S INTERESTS .................................................................................13

    A.    The Remedy Gap ...................................................................14

    B.    Geographic and Jurisdictional Mismatch .......................................15

    C.    Divergent Legal Theories Unavailable to Existing Parties............................16

    D.    Concrete Scenarios Demonstrating Possible Inadequacy .............................16

CONCLUSION.................................................................................................18

BE.17316639.2/LAN310-290397

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Acra Turf Club v. Zanzuccki,
  561 F. App'x 219 (3d Cir. 2014) ..................................................................................15

Ass'n for Fairness in Bus., Inc. v. New Jersey,
  193 F.R.D. 228 (D.N.J. 2000)..................................................................................14, 16

Bosco v. Beck,
  475 F. Supp. 1029 (D.N.J. 1979) ................................................................................13

Brody v. Spang,
  957 F.2d 1108 (3d Cir. 1992)..................................................................6, 11, 14, 15

Cameron v. EMW Women's Surgical Ctr., P.S.C.,
  595 U.S. 267 (2022)..................................................................................................7, 8

Citizens Advisory Comm. on Private Prisons, Inc. v. U.S. Dep't of Justice,
  197 F. Supp. 2d 226 (W.D. Pa. 2001)......................................................................13

Citizens Advisory Comm. on Private Prisons, Inc. v. U.S. Dep't of Justice,
  197 F. Supp. 2d at 238–39 .........................................................................................18

Commonwealth of Pennsylvania v. President United States of America,
  701 F.3d 938 (3d Cir. 2012)....................................................................................7, 14

Commonwealth of Pennsylvania v. President United States of America,
  888 F.3d 52 (3d Cir. 2018)......................................................................................9, 14

Del. Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Eng'rs,
  685 F.3d 259 (3d Cir. 2012)......................................................................................13

Del. Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Eng'rs,
  685 F.3d at 269–71. Case..........................................................................................18

Harris v. Pernsley,
  820 F.2d 592 (3d Cir. 1987).....................................................................................6, 9

Kleissler v. U.S. Forest Serv.,
  157 F.3d 964 (3d Cir. 1998)..................................................................6, 9, 14, 16, 18

Maryland v. Mullin,
  2026 WL 1045503 (D. Md. Apr. 17, 2026).........................................................9, 12, 15, 17

BE.17316639.2/LAN310-290397

Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,
    72 F.3d 361 (3d Cir. 1995).........................................................6, 8, 9, 10, 11, 13, 18

NAACP v. New York,
    413 U.S. 345 (1973)......................................................................................7

Pennsylvania General Energy Co. v. Grant Township,
    658 F. App'x 37 (3d Cir. 2016) ..................................................................16

Pennsylvania v. Rizzo,
    530 F.2d 501 (3d Cir. 1976)........................................................................15

Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.,
    223 F.R.D. 326 (D.N.J. 2004).................................................................9, 10

In re Safeguard Scientifics,
    220 F.R.D. 43 (E.D. Pa. 2004).....................................................................11

Town of Chester v. Laroe Estates, Inc.,
    581 U.S. 433 (2017)......................................................................................7

Trbovich v. United Mine Workers of Am.,
    404 U.S. 528 (1972).................................................................................13, 18

United States v. Alcan Aluminum, Inc.,
    25 F.3d 1174 (3d Cir. 1994).........................................................................10

United States v. Territory of V.I.,
    748 F.3d 514 (3d Cir. 2014).........................................................................14

United States v. W.R. Grace & Co.–Conn.,
    185 F.R.D. 184 (D.N.J. 1999).......................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 24(a)(2) ...................................................1, 6, 9, 10, 18

N.J.A.C. § 7:14A-23.6(b)........................................................................................5

New Jersey Administrative Code § 7:14A-23.3 ............................................................3

BE.17316639.2/LAN310-290397

## PRELIMINARY STATEMENT

Netcong Heights LLC submits this Brief in Support of its Motion to Intervene as of Right as a Plaintiff-Intervenor pursuant to Federal Rule of Civil Procedure 24(a)(2). Netcong Heights LLC owns and operates a 424-unit residential apartment complex housing nearly 700 residents in the Borough of Netcong, Morris County, New Jersey. Netcong Heights LLC owns the property located at Block 45, Lot 1, Borough of Netcong. The Netcong Heights LLC property is burdened by a perpetual, recorded Sanitary Sewer Line Easement. Netcong Heights LLC's private sanitary sewer line receives the wastewater originating at the Roxbury Warehouse (the facility at issue in this action). The Roxbury Warehouse's effluent flows directly through Netcong Heights LLC's private sanitary sewer line before reaching the Borough of Netcong's municipal sewer system and ultimately the Musconetcong Sewerage Authority Sewage Treatment Plant.

Netcong Heights LLC takes no position on DHS's intended use of the Roxbury Warehouse as an immigration detention facility or on the policy issues underlying this action. Netcong Heights LLC seeks intervention only to protect its property, its sewer infrastructure, and the health, safety, and welfare of its nearly 700 residents from the measurable increased wastewater-flow risks described below.

Netcong Heights LLC satisfies all four requirements for intervention as of right under Rule 24(a)(2): its application is timely; it has a direct, legally protectable interest in the subject matter of this litigation; its interest will be impaired if this action is resolved without its participation; and the existing parties do not adequately represent Netcong Heights LLC 's distinct property and contractual interests. The Court should thereby grant this motion and permit Netcong Heights LLC to file its proposed Complaint in Intervention.

- 1 -

## STATEMENT OF FACTS

### A.    The Roxbury Warehouse and the Proposed Detention Facility

This action concerns the proposed conversion of a 470,444-square-foot warehouse located at 1879 Route 46, Roxbury Township, New Jersey (Block 9501, Lot 1) (the "Roxbury Warehouse") into an immigration detention facility housing up to 1,500 detainees. (Compl. ¶¶ 1–5.) The warehouse was constructed in 2023 and is currently equipped with only four toilets, one urinal, and approximately five to seven sinks. (Compl. ¶¶ 85–86.)

### B.    Netcong Heights LLC 's Sanitary Sewer Easement and Cost-Sharing Obligation

On August 26, 2021, Netcong Heights LLC  (as Grantor) and Adler-Roxbury, LLC (as Grantee and then-owner of the Roxbury Warehouse site) executed a Sanitary Sewer Line Easement and Construction and Maintenance Easement (the "Easement"), which was recorded on September 10, 2021, in the Morris County Clerk's Office at Book 24211, Page 527 (File No. 2021074063). (Declaration of Michael Gottlieb, Netcong Heights LLC 's co-Manager ("Gottlieb Decl.") ¶ 5, Ex. A.) The Easement grants Adler-Roxbury, LLC (and its successors and assigns) a perpetual, non-exclusive sanitary sewer line easement across Netcong Heights LLC 's property (Block 45, Lot 1, Borough of Netcong) for purposes of installing, building, replacing, reconstructing, repairing, and maintaining a sanitary sewer line and appurtenances to serve the Roxbury Warehouse. (Gottlieb Decl. ¶ 6, Ex. A ¶¶ 1–2.)

Critically, Paragraph 4 of the Easement assigns the Grantee—not Netcong Heights LLC —responsibility for ten percent (10%) of all maintenance, repair, and replacement costs of "the existing Netcong Heights sanitary sewer lines through which the Grantee's sanitary sewer effluence will flow." (Gottlieb Decl. ¶ 7, Ex. A ¶ 4.) This negotiated provision allocates maintenance, repair, and replacement costs for that sewer infrastructure; it does not impose the

- 2 -

ten-percent obligation on Netcong Heights LLC . Whereas it is anticipated that the effluence to be generated by a detention center use of the Roxbury Warehouse will essentially "flip" the relative effluence levels such that the detention center will generate several multiples of additional unbridled effluence relative to Netcong Heights LLC 's apartment complex. (Decl. ¶¶ 16-17)

### C. The Governmental Sewage Transmission Agreement and the 11,700 GPD Flow Cap Limitation

On December 9, 2021, the Borough of Netcong and Adler-Roxbury, LLC entered into a Sewage Transmission Agreement (the "Transmission Agreement") governing the conveyance of wastewater from the Roxbury Warehouse through the private sewer system owned by Netcong Heights, LLC and the Borough of Netcong's municipal system. (Gottlieb Decl. ¶ 8, Ex. B.) The Transmission Agreement expressly states that wastewater discharge from the warehouse property "requires conveyance through a private sewer system owned by Netcong Heights, LLC" before reaching "the Netcong Municipal Sewer System." (Ex. B, Recitals.)

The Transmission Agreement establishes the maximum permitted average daily wastewater flow from the warehouse project at 11,700 gallons per day, calculated based on New Jersey Administrative Code § 7:14A-23.3 flow criteria for a 470,444-square-foot warehouse with 280 employees and 47,000 square feet of office space. (Ex. B ¶¶ 1–3.) Under the Transmission Agreement, no wastewater flow may exceed 11,700 gallons per day without the Borough of Netcong's express written consent. (Ex. B ¶ 2.) NJDEP's 2022 Treatment Works Approval authorized a sewer extension serving the warehouse with a maximum flow of 11,700 gallons per day, consistent with the Transmission Agreement. (Compl. ¶ 100.) The 11,700-gallon-per-day limit is established by the Transmission Agreement and reflected in NJDEP's 2022 Treatment Works Approval; it is not a limit established by the Easement itself, but a separate and distinct contractual limitation.

- 3 -

**D.    The Wastewater Conveyance Path Through Netcong Heights LLC 's Property**

The physical conveyance path for wastewater from the Roxbury Warehouse is undisputed. Netcong Heights LLC  is the first identified downstream conveyance point through which wastewater from the Roxbury Warehouse passes before entering the Borough of Netcong's municipal sewer system. Wastewater originates at the Roxbury Warehouse, flows through a sewer extension across Netcong Heights LLC 's property within the Easement area, passes through this private sewer system owned by Netcong Heights, LLC, then enters the Borough of Netcong's municipal sewer system and ultimately reaches the Musconetcong Sewerage Authority Sewage Treatment Plant, which discharges treated wastewater into the Musconetcong River. (Compl. ¶ 99; Gottlieb Decl. ¶ 11, Ex. C.) Plaintiffs', State of New Jersey and Township of Roxbury, own Complaint confirms this path, alleging that "wastewater flowing from the Roxbury Warehouse is ultimately conveyed through Netcong Heights (an apartment complex), then through the Borough of Netcong, and then flows to the Musconetcong Sewerage Authority Sewage Treatment Plant." (Compl. ¶ 99.)

**E.    The Projected Fifteen-Fold Increase in Wastewater Flow**

If the Roxbury Warehouse is converted to a detention facility housing up to 1,500 detainees, the projected wastewater output based upon Plaintiffs' pubic data  would increase from 11,700 gallons per day to approximately 187,500 gallons per day. This is more than fifteen times the limit established by the Transmission Agreement and reflected in NJDEP's 2022 Treatment Works Approval. (Compl. ¶ 101.) Plaintiffs allege, and the public record evidence confirms, that "[t]he Borough of Netcong's existing conveyance system has insufficient capacity to convey the additional anticipated flow from the proposed detention facility." (Compl. ¶ 102.)

- 4 -

The Declaration of Paul W. Ferriero, P.E. (Dkt. 10-2), a civil engineer retained by the Township of Roxbury, analyzed four critical pipe segments downstream of the Roxbury Warehouse (Pipes A through D, located between manholes MH209-MH76, MH213-MH212, MH213-MH214, and MH210A-MH210) and found that each pipe already lacks capacity when flowing half-full to convey even twice the existing average flow under NJDEP design standards (N.J.A.C. § 7:14A-23.6(b)), meaning "[a]dding any such flow increases the risk of a sewage overflow or back up associated with these pipes." (Ferriero Decl. ¶¶ 16–18.)

The Declaration of Charles Jenkins (Dkt. 10-4), NJDEP Assistant Director of the Division of Water Quality, further explains the mechanism of harm: gravity sewers that become overloaded create a "pressurized system, with ripple effects on the hydraulics both upstream and downstream," risking "raw sewage overflows at locations such as manholes, floor drains, shower drains, sink drains, and toilets." (Jenkins Decl. ¶¶ 10–12.) Jenkins explains that if "untreated sewage flows in the streets or seeps into showers and sinks, it can spread pathogens and make people sick." (Id.)

## F.    DHS's Reversal and the Triggering Event for Intervention

On June 29, 2026, the parties submitted a Joint Status Report (the "June 29 Status Report") in which Defendants represented that they "no longer intend to convert the Roxbury Warehouse into an immigration detention facility and intend to sell the warehouse." (Dkt. No. 42; Gottlieb Decl. ¶ 19.) In reliance upon this representation, Netcong Heights LLC  did not believe intervention was necessary, as the threat to its property and residents appeared to have been eliminated.

Then, on July 10, 2026, Plaintiffs' counsel filed a Status Update (the "July 10 Status Update") (Dkt. No. 44; Gottlieb Decl. ¶ 24) informing the Court that "[o]n July 8, DHS officials informed counsel that upon reconsideration, the agency intends to move forward with plans to consider the retrofitting of the Roxbury Township warehouse facility for use as a detention

- 5 -

facility," and that "as of July 10, agency deliberations remain ongoing." Netcong Heights LLC Learned of this change in position on July 12, 2026 and secured confirmation of the same on July 13, 2026. (Gottlieb Decl. ¶¶ 25-26) Netcong Heights LLC  determined to seek intervention upon learning of this reversal. During the week of July 27, 2026 and thereafter, Netcong Heights LLC communicated with counsel and determined to proceed with a motion to intervene. (Gottlieb Decl. ¶ 27.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In the Third Circuit, a court evaluates four factors: (1) whether the application is timely; (2) whether the applicant has a sufficient interest in the litigation; (3) whether the interest may be affected or impaired by the disposition of the action; and (4) whether the interest is adequately represented by existing parties. Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998); Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995); Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987).

The Third Circuit applies Rule 24(a)(2) flexibly and pragmatically, while requiring each element to be satisfied. Kleissler v. U.S. Forest Serv., 157 F.3d 964, 970–72 (3d Cir. 1998); Harris v. Pernsley, 820 F.2d 592, 596–97 (3d Cir. 1987). The "polestar" is whether the proposed intervenor's interest is specific to it, capable of definition, and directly affected in a substantially concrete fashion by the relief sought. Kleissler, 157 F.3d at 972. A court also may permit intervention limited to discrete issues or remedial questions where the movant's protectable interest is concentrated there. Brody v. Spang, 957 F.2d 1108, 1116–17 (3d Cir. 1992); Mountain

- 6 -

BE.17316639.2/LAN310-290397

Top Condo. Ass'n, 72 F.3d at 367–68. Commonwealth of Pennsylvania v. President United States of America, 701 F.3d 938, 951–58 (3d Cir. 2012), confirms that proposed intervenors need not possess an interest in every aspect of the litigation and may intervene as to specific issues, including a distinct remedial stage, so long as their interest in those issues is significantly protectable. The decision further recognizes that remedy-stage relief, including a settlement, may affect nonparty interests even where intervention was not warranted at the liability stage. The modern Third Circuit formulation likewise asks whether the asserted interest is specific to the applicant, capable of definition, and directly affected in a substantially concrete fashion by the relief sought. Benjamin ex rel. Yock v. Department of Public Welfare of Pennsylvania, 701 F.3d 938, 958 (3d Cir. 2012).

An intervenor of right must also demonstrate Article III standing where it seeks relief different from that sought by the existing parties. Town of Chester v. Laroe Estates, Inc., 581 U.S. 433, 440 (2017). As demonstrated in Netcong Heights LLC 's proposed Complaint in Intervention, Netcong Heights LLC seeks property-specific and contract-based relief that goes beyond the APA declaratory relief sought by Plaintiffs; Netcong Heights LLC readily satisfies Article III standing requirements.

## LEGAL ARGUMENT

### I.    NETCONG HEIGHTS LLC 'S APPLICATION IS TIMELY

"Timeliness is to be determined from all the circumstances." NAACP v. New York, 413 U.S. 345, 365–66 (1973). While the "point to which the suit has progressed" is one factor, it is "not solely dispositive." Id. The most critical inquiry is whether the movant sought intervention "as soon as it became clear" that its interests "would no longer be protected" by existing parties. Cameron v. EMW Women's Surgical Ctr., P.S.C., 595 U.S. 267, 279–80 (2022). In this Circuit,

- 7 -

BE.17316639.2/LAN310-290397

courts consider "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Mountain Top Condo. Ass'n, 72 F.3d at 369. "The mere passage of time, however, does not render an application untimely," and courts should be reluctant to deny intervention as untimely where the movant may be seriously harmed if excluded. Id. at 369–70.

Here, Netcong Heights LLC could not reasonably have sought intervention before the Federal government reversed course. On June 29, 2026, Defendants represented in the Joint Status Report (Dkt. No. 42; Gottlieb Decl. ¶ 19) that they "no longer intend to convert the Roxbury Warehouse into an immigration detention facility and intend to sell the warehouse." Netcong Heights LLC reasonably relied on that representation; intervention appeared unnecessary because the threat to Netcong Heights LLC 's property had been eliminated by the government's own representation.

It was only after the July 10, 2026 Status Update (Dkt. No. 44; Gottlieb Decl. ¶ 24), reporting that DHS had reversed course and intended to consider retrofitting the warehouse for detention use, that Netcong Heights LLC 's interests were again imperiled. During the week of July 27, 2026, Netcong Heights LLC communicated with counsel and determined to proceed with this motion. (Gottlieb Decl. ¶ 27.) No existing party is prejudiced by Netcong Heights LLC 's intervention at this stage, where the case remains in a stayed posture with no responsive pleading yet filed, no discovery underway, and no trial date set.

Moreover, this motion will cause no disruption to the existing proceedings. The preliminary injunction motion remains stayed by stipulation (Dkt. No. 36), the responsive pleading deadline has been stayed (Dkt. No. 40), and the parties are engaged in periodic status conferencing while DHS evaluates its next steps. Netcong Heights LLC 's intervention at this juncture is precisely the timely, prejudice-free filing the rule contemplates. See Cameron, 595 U.S. at 279–

- 8 -

80.

That conclusion is reinforced by Maryland v. Mullin, 2026 WL 1045503 (D. Md. Apr. 17, 2026), which involved the same federal detention-reengineering initiative at another location and rejected the argument that agency representations of additional, unspecified NEPA review required the plaintiff to wait while construction or retrofitting could resume without meaningful notice. The court held that where DHS had purchased the warehouse, committed resources, and remained able to proceed quickly after an undefined review, the challenge was ripe and the plaintiff need not wait until the threatened environmental and public-health harm materialized. Id. at *15–17, *38 & n.28. The same reasoning applies here: DHS's June 29 abandonment representation made intervention unnecessary; DHS's July 8–10 reversal made Netcong Heights LLC 's interests newly and concretely imperiled.

## II. NETCONG HEIGHTS LLC  HAS A SUFFICIENT INTEREST IN THIS LITIGATION

Rule 24(a)(2) requires the applicant to demonstrate "an interest relating to the property or transaction that is the subject of the action." The Third Circuit requires a "significantly protectable" legal interest, meaning a legal interest distinct from interests of a general and indefinite character and specific to the proposed intervenor. Mountain Top Condo. Ass'n, 72 F.3d at 366; Harris, 820 F.2d at 601; Kleissler, 157 F.3d at 972. The Third Circuit has since described this inquiry as requiring an interest "specific to [the applicant], capable of definition, and directly affected in a substantially concrete fashion by the relief sought." Commonwealth of Pennsylvania v. President United States of America, 888 F.3d 52, 58 (3d Cir. 2018). Courts in this District apply the same principle and recognize that ownership or contractual rights in the property or instrument directly affected by the litigation satisfy Rule 24(a)(2). Princeton Biochemicals, Inc. v. Beckman Coulter, Inc., 223 F.R.D. 326, 329 (D.N.J. 2004).

- 9 -

Netcong Heights LLC 's interest is specific and legally protectable. Netcong Heights LLC holds:

(a) A perpetual, recorded, non-exclusive Sanitary Sewer Line Easement and Construction and Maintenance Easement (granted August 26, 2021, recorded September 10, 2021, Morris County Book 24211, Page 527) across its property, benefiting the Roxbury Warehouse site;

(b) A contractual right under Paragraph 4 of the Easement requiring the Grantee—not Netcong Heights LLC —to bear 10% of all maintenance, repair, and replacement costs of the existing Netcong Heights sanitary sewer lines through which the warehouse's sewage flows; and

(c) Rights under the Sewage Transmission Agreement, which governs wastewater conveyance through the private sewer system owned by Netcong Heights, LLC and establishes a maximum permitted average daily wastewater flow of 11,700 gallons per day from the warehouse.

(d) A direct property impact between government action and Intervenor, Netcong Heights LLC's property public, health safety and welfare.

These are precisely the types of concrete, legally protectable property and contractual interests that Rule 24(a)(2) was designed to protect. See Mountain Top Condo. Ass'n, 72 F.3d at 366–68 (distinguishing a mere economic interest from a protectable interest in specific property); Princeton Biochemicals, 223 F.R.D. at 329 (ownership interest satisfied Rule 24(a)(2)); United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1185 (3d Cir. 1994) (interest must belong to, or be owned by, the proposed intervenor). Moreover, there is a direct relationship between Netcong Heights LLC 's interest and the Plaintiffs' claims: the operative Complaint itself identifies Netcong

- 10 -

Heights LLC 's property by name, alleging that "wastewater flowing from the Roxbury Warehouse is ultimately conveyed through Netcong Heights (an apartment complex)" (Compl. ¶ 99), and the Complaint's theory of harm depends on the very infrastructure that runs through Netcong Heights LLC 's property. United States v. W.R. Grace & Co.–Conn., 185 F.R.D. 184 (D.N.J. 1999) does not undermine that conclusion. In W.R. Grace, there, the court rejected a municipality's generalized interest in residents' health and property values as a general, indefinite, and tangential interest, and found no direct effect on the municipality's own rights. Netcong Heights LLC  is materially different: it owns the property burdened by the recorded Easement and the private sewer system through which the project's wastewater must pass, and it has specific Easement- and Transmission Agreement-related contractual interests, including the Easement's negotiated maintenance-cost allocation. Netcong Heights LLC   therefore asserts a direct physical-infrastructure and contractual interest, not a generalized municipal concern. Id. at 189–91

## III.   NETCONG HEIGHTS LLC 'S INTEREST WILL BE IMPAIRED WITHOUT INTERVENTION

The impairment requirement is practical, not formalistic. Once a protectable interest is shown, the movant need only demonstrate that the interest "might become affected or impaired, as a practical matter, by the disposition of the action in [its] absence." Mountain Top Condo. Ass'n, 72 F.3d at 368. Courts must assess the practical consequences of the litigation and may consider any significant legal effect on the applicant's interest, including the effect of a proposed remedy. Brody, 957 F.2d at 1122; In re Safeguard Scientifics, 220 F.R.D. 43, 48 (E.D. Pa. 2004). Benjamin confirms that this inquiry may be stage-specific: a proposed intervenor need not show an interest in every aspect of the merits if the remedial phase or a settlement may affect a significantly protectable interest, and intervention may be limited to that remedial phase. 701 F.3d at 951–58. Netcong Heights LLC  far exceeds that threshold.

- 11 -

If this action proceeds without Netcong Heights LLC 's participation, and any disposition—whether by court order, settlement, mootness, or partial relief—fails to address the specific capacity of the sewer segment running through Netcong Heights LLC 's property, Netcong Heights LLC 's nearly 700 residents will remain exposed to the same physical mechanism of harm identified by Plaintiffs' own experts. The Ferriero Declaration establishes that the downstream conveyance system already lacks capacity under NJDEP design standards to handle even twice the existing average flow; Netcong Heights LLC 's apartment complex sits directly in this conveyance path, upstream of the very manholes analyzed. The Jenkins Declaration confirms that when gravity sewers become overloaded, sewage backs up through "floor drains, shower drains, sink drains, and toilets"—precisely the fixtures inside Netcong Heights LLC 's residential building. These are real, cognitive events.

Maryland v. Mullin confirms that these sewer-capacity risks are neither conjectural nor collateral. There, the court enjoined DHS and ICE from converting a warehouse into a detention facility after finding that even a 542-person facility would require significant sewage-capacity improvements, since a six-inch sewer line could handle only approximately 63,500 gallons per day, and that failure to upgrade the sewer system could create backups and overflows producing public-health hazards and environmental harm. 2026 WL 1045503, at *28–29. Mullin further reasoned that uncertainty about the precise construction work did not defeat the plaintiff's showing because that uncertainty flowed from the very NEPA failure alleged—the agency's failure to analyze what would be necessary to effectuate the warehouse conversion. Id. at *29 & n.25. The same logic applies with greater force here, where the pleaded and record-supported effluence flow would increase  from 11,700 gallons per day to approximately 187,500 gallons per day through a conveyance path that expressly includes Netcong Heights LLC's apartment complex.

- 12 -

BE.17316639.2/LAN310-290397

Moreover, because the operative Complaint's prayer for relief is limited to APA declaratory judgments, vacatur of DHS's decision, and an injunction against implementation (Compl., Prayer for Relief ¶¶ (i)–(vi)), even a complete victory by the existing Plaintiffs would not necessarily require any capacity fix, flow limitation, engineering upgrade, or protective measure tied to the segment of sewer infrastructure running through Netcong Heights LLC's property. Disposition of this action without Netcong Heights LLC -specific relief would leave Netcong Heights LLC's property and residents exposed.

The Third Circuit's NEPA cases point in the same direction. NEPA exists to ensure agencies consider environmental consequences before committing resources and to communicate those analyses to the public; it prohibits uninformed agency action, not merely unwise action. Del. Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Eng'rs, 685 F.3d 259, 269–71 (3d Cir. 2012). In the sewer and detention-facility context specifically, courts in this Circuit have required meaningful consideration of wastewater and hydrology impacts where those impacts are part of the project's environmental footprint. Citizens Advisory Comm. on Private Prisons, Inc. v. U.S. Dep't of Justice, 197 F. Supp. 2d 226, 238–39, 264–65 (W.D. Pa. 2001); Bosco v. Beck, 475 F. Supp. 1029, 1033, 1036–37 (D.N.J. 1979). Netcong Heights LLC seeks to intervene so that the specific, unexamined segment of that wastewater footprint—its own easement-governed line serving nearly 700 residents—is not lost in a case resolved on broader APA grounds.

## IV.    THE EXISTING PARTIES DO NOT ADEQUATELY REPRESENT NETCONG HEIGHTS LLC'S INTERESTS

The burden of demonstrating inadequate representation "should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972); Mountain Top Condo. Ass'n, 72 F.3d at 368. The applicant need only show that representation "may be" inadequate. Id. The Third Circuit recognizes three established grounds: similar but sufficiently divergent interests,

- 13 -

BE.17316639.2/LAN310-290397

collusion, or lack of diligence. Brody, 957 F.2d at 1123; United States v. Territory of V.I., 748 F.3d 514, 520 (3d Cir. 2014). And even where a governmental party is present, the burden is "comparatively light" when the government's view is necessarily colored by broader public-welfare considerations and the proposed intervenor's interest is personal, concrete, and parochial. Kleissler, 157 F.3d at 972–74; Ass'n for Fairness in Bus., Inc. v. New Jersey, 193 F.R.D. 228, 231–32 (D.N.J. 2000). The Third Circuit has emphasized that this burden varies with the circumstances and is strongest only when governmental and private interests closely parallel one another. Commonwealth of Pennsylvania v. President United States of America, 888 F.3d 52, 60–61 (3d Cir. 2018). In Benjamin ex rel. Yock v. Dept. of Public Welfare of PA, 701 F.3d 938, 958 (3d Cir. 2012), the court found government representation inadequate at the remedy stage when the agency shifted from defending the status quo to pursuing a cost-effective settlement, leaving its broad public-welfare mandate in tension with the intervenors' personal interests. Netcong Heights LLC  satisfies this showing through four independent lines of argument.

### A.    The Remedy Gap

The operative State of New Jersey and Township of Roxbury Complaint's prayer for relief seeks only: (i)–(iii) APA declaratory judgments that DHS's decision violated NEPA, the Intergovernmental Cooperation Act, and the INA/was arbitrary and capricious; (iv) vacatur of DHS's decision; (v) an injunction against further implementation; and (vi) "such other relief as the Court may deem proper." (Compl., Prayer for Relief ¶¶ (i)–(vi).) None of the operative Complaint's relief requires or guarantees any capacity fix, flow limitation, engineering upgrade, permitting condition, or protective measure tied to the Netcong Heights LLC -easement segment. Nor does Plaintiffs' relief address the Easement's allocation of maintenance, repair, and replacement costs, including the Grantee's obligation to bear 10% of those costs. This is a concrete remedy gap, not a disagreement over litigation style.

- 14 -

Even a complete win by the existing Plaintiffs. i.e.—full vacatur and a permanent injunction—would not necessarily protect Netcong Heights LLC . Brody teaches that intervention may be appropriate for the remedial phase even where a proposed intervenor does not seek to control the merits, because a remedy may uniquely affect nonparty interests. 957 F.2d at 1116–17. Benjamin is particularly instructive: the Third Circuit held that intervenors could participate in the remedy stage and challenge a settlement even though they had not been entitled to intervene at the liability stage, because the settlement could affect their distinct interests. 701 F.3d at 951–58. Maryland v. Mullin further illustrates the same point in the warehouse-conversion context. In Mullin,the court tailored preliminary relief to bar construction and renovation for detention use while excluding limited security and maintenance activities that did not immediately relate to the alleged harm. 2026 WL 1045503, at *12, *39–40. Netcong Heights LLC 's proposed Complaint seeking Intervention is likewise remedy-focused and targeted: it seeks an injunction prohibiting any increase in sewer flow through the Netcong Heights LLC -easement segment absent an engineering-verified capacity upgrade, and a declaration that conversion generating flow in excess of 11,700 gallons per day violates Netcong Heights LLC 's vested property and contractual rights.

## B.    Geographic and Jurisdictional Mismatch

Netcong Heights LLC 's property lies in the Borough of Netcong—not the Township of Roxbury. Roxbury Township, while a Plaintiff in this action, has no jurisdiction over or legal charge to represent a Borough of Netcong, New Jersey-based landowner or its residents. The Borough of Netcong itself is not a party. In the Third Circuit, a presumption of adequate representation may arise when a governmental party is charged by law with representing the proposed intervenor's interests. Pennsylvania v. Rizzo, 530 F.2d 501, 505 (3d Cir. 1976); Acra Turf Club v. Zanzuccki, 561 F. App'x 219, 222 (3d Cir. 2014). But that presumption is at its weakest,or does not apply, where the proposed intervenor asserts a specific, parochial, property-

- 15 -

based interest distinct from the government's broader public-welfare objectives. <u>Kleissler</u>, 157 F.3d at 972–74; <u>Ass'n for Fairness in Bus.</u>, 193 F.R.D. at 231–32. Neither the State of New Jersey, nor Roxbury Township is charged with protecting Netcong Heights LLC 's specific easement rights, flow-cap rights, or resident-safety concerns within the Borough of Netcong. The <u>Pennsylvania General Energy Co. v. Grant Township</u>, 658 F. App'x 37, 40–42 (3d Cir. 2016) case, illustrates the contrast. In that decision, the court upheld denial where the proposed intervenors' interests closely tracked the township's, counsel and pleadings substantially overlapped, and no conflicting economic interest was shown. Netcong Heights LLC presents the opposite case: Netcong Heights LLC owns the property burdened by the Easement and the private sewer system; has specific Easement- and Transmission Agreement-related contractual interests; and seeks protection for a physical infrastructure interest that the herein Plaintffs, State and Roxbury do not own or control. Pennsylvania General Engery is nonprecedential and is cited only for this contrast.

### C. Divergent Legal Theories Unavailable to Existing Parties

Netcong Heights LLC 's proposed Complaint in Intervention asserts contract and easement-based claims—specifically, anticipatory breach of the Sanitary Sewer Easement and Sewage Transmission Agreement, and declaratory relief regarding the scope of permissible use under those instruments. These legal theories are entirely unavailable to the existing Plaintiffs. The State of New Jersey and the Township of Roxbury are not direct parties to or arguable beneficiaries of the Easement or the Transmission Agreement. Plaintiffs hold no comparable proprietary stake in Netcong Heights LLC's private sewer line. Netcong Heights LLC 's claims arise from distinct legal instruments and seek distinct relief that no existing party is obligated to protect.

### D. Concrete Scenarios Demonstrating Possible Inadequacy

Beyond the structural divergences described above, four concrete scenarios illustrate how the existing parties' representation may prove inadequate—satisfying <u>Trbovich's</u> "minimal

- 16 -

burden" standard:

> **(1) Full vacatur without infrastructure guarantee:** Vacatur of DHS's current decision stops the present plan, but does not require repair or capacity upgrades to the Netcong Heights LLC  segment. A revised, smaller-scale DHS proposal—one that satisfies NEPA after an EA—could still exceed the 11,700-gpd cap, yet fall outside the scope of any injunction tied to the vacated first decision. The court's analysis in <u>Maryland v. Mullin</u> confirms why this is a real gap where even a reduced 542-person warehouse-detention proposal required significant sewage-capacity improvements and posed overflow risks if no upgrade occurred. 2026 WL 1045503, at *28–29.

> **(2) Mootness through unilateral agency abandonment:** This scenario nearly materialized on June 29, 2026 (Dkt. No. 42; Gottlieb Decl. ¶ 19), when Defendants represented that they no longer intended to convert the warehouse and intended to sell it. Had the Court dismissed the action as moot, the case could have ended with no protection attaching to Netcong Heights LLC 's sewer infrastructure recognizable issues at hand. DHS's subsequent reversal, reflected in the July 10, 2026 Status Update (Dkt. No. 44; Gottlieb Decl. ¶ 21), demonstrates that agency representations cannot be relied upon as a permanent safeguard for Netcong Heights LLC . <u>Maryland v. Mullin</u> rejected materially similar voluntary-cessation arguments because DHS had not made it absolutely clear the challenged conduct could not recur and retained the ability to move quickly after unspecified further review. 2026 WL 1045503, at *15–17, *38 & n.28.

> **(3) Settlement without Netcong Heights LLC -specific relief:** The State and Township arguably have  incentive to settle for concessions addressing their statutory priorities,— for example a completed NEPA process, intergovernmental consultation commitments, or

- 17 -

BE.17316639.2/LAN310-290397

a scaled-back facility, without requiring DHS to fund or guarantee capacity upgrades to Netcong Heights LLC 's specific concerns.

**(4) Partial relief on procedural claims only:** If the Court rules only on the NEPA claim (Count I) but not the INA "appropriateness" claim (Count III—the count most tied to sewer capacity), DHS could complete an EA concluding that mitigation measures (holding tanks, trucking, reduced detainee counts, or later municipal coordination) and  satisfy NEPA without ever guaranteeing the physical adequacy of the specific Netcong Heights LLC - easement segment. Citizens Advisory Comm. on Private Prisons, Inc. v. U.S. Dep't of Justice, 197 F. Supp. 2d at 238–39, and Del. Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Eng'rs, 685 F.3d at 269–71. Case law illustrate why broader procedural relief would not necessarily secure Netcong Heights LLC -specific protection. That risk is recognizable because NEPA is procedural; it doesn't focus upon a particular neighboring property owner's substantive outcome.

Each of these scenarios demonstrates a plausible path by which this litigation could conclude—even if favorably for the existing Plaintiffs—without addressing Netcong Heights LLC 's distinct property and contractual interests. That possibility is sufficient under the minimal-burden standard recognized by Trbovich and applied by the Third Circuit in Mountain Top Condo. Ass'n and Kleissler.

## CONCLUSION

For the foregoing reasons, Netcong Heights LLC respectfully requests that the Court grant its Motion to Intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), thereby permitting the filing of Netcong Heights LLC's proposed Complaint in Intervention, and add Netcong Heights

- 18 -

BE.17316639.2/LAN310-290397

LLC as a Plaintiff-Intervenor in this action.

Respectfully submitted,


 /s/ Stuart J. Polkowitz, Esq.
Stuart J. Polkowitz, Esq.
Kenneth A. Porro, Esq.
BRACH EICHLER L.L.C.
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973-228-5700
Facsimile: 973-228-7852
*Attorneys for Plaintiff Intervenor, Netcong Heights LLC*

Date:    August 13, 2026

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on this 13 th day of August, 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the Court's CM/ECF electronic filing system.

 /s/ Stuart J. Polkowitz, Esq.
Stuart J. Polkowitz, Esq.
Kenneth A. Porro, Esq.
BRACH EICHLER L.L.C.
101 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973-228-5700
Facsimile: 973-228-7852
*Attorneys for Plaintiff Intervenor, Netcong Heights LLC*

Date:    August 13, 2026

- 20 -