**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

STATE OF NEW JERSEY and TOWNSHIP OF ROXBURY,

Plaintiffs,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and TODD M. LYONS, in his official capacity as Senior Official Performing the Duties of the Director of Immigration and Customs Enforcement,

Defendants.

HON. JAMEL K. SEMPER, U.S.D.J.
HON. JAMES B. CLARK, III, U.S.M.J.

Civil Action No.: 26-02884

**JOINT STATUS REPORT**

The parties submit this status report to comply with this Court's May 19, 2026 Order requiring the parties to submit a joint status report every 60 days "until the agency issues a new decision." ECF No. 40. The parties set forth their respective updates on the status of this matter below.

Plaintiffs' update also sets forth their position in response to the Court's November 10, 2026 Order directing the parties to confer and "propos[e] a schedule for future proceedings" by November 17, 2026. ECF No. 52. Defendants will submit

their position regarding a schedule for future proceedings in this matter after providing additional information in response to Plaintiffs' informal request for details about the contract and conferring further with Plaintiffs by November 17, 2026, in accordance with the Court's Order, Dkt. No. 52.

## I. Plaintiffs' Position

As Plaintiffs have noted in recent status reports, *see* ECF Nos. 50, 51, Defendants' recent actions have raised questions about whether they are in compliance with this Court's May 12 Order, which bars conversion of the Roxbury warehouse into a detention center until the completion of an initial environmental assessment. Plaintiffs have been actively seeking from Defendants information needed to assess their compliance with the May 12 Order. In particular, since November 6, Plaintiffs have repeatedly requested information from Defendants regarding a $31.8 million contract that they reportedly entered into for purposes of converting the warehouse into a detention center. The need for information about Defendants' contract and current use of the warehouse site is especially pronounced in light of recent reports that Defendants have held detained individuals at the facility. While Defendants finally indicated today (November 16) that they are willing to produce the contract in question, Plaintiffs have not yet obtained or reviewed that contract. Meanwhile, Defendants have yet to respond to other related requests for information regarding their activities at the warehouse site.

Until Plaintiffs receive the contract and related information regarding Defendants' actions at the warehouse site, Plaintiffs cannot determine whether Defendants have violated this Court's May 12 Order, seek appropriate relief for any such violation, or otherwise propose to the Court a schedule for further proceedings. Plaintiffs will continue to confer with Defendants further regarding the production of this information, but if Plaintiffs are unable to obtain this information, they may seek necessary relief from this Court. In the meantime, because the May 12 Order contemplates that a renewed preliminary injunction motion would not be filed until after Defendants complete an initial environmental assessment, Plaintiffs do not believe that a schedule on such a motion needs to be set at this juncture.

**A. Background**

Plaintiffs brought this suit in March 2026 challenging Defendants' decision to convert a warehouse in Roxbury, New Jersey into an immigration detention center. Among other claims, Plaintiffs asserted that Defendants had failed to conduct the necessary environmental reviews under the National Environmental Policy Act (NEPA). Before federal agencies decide to move forward with a major federal action like the construction of a detention center, NEPA generally requires that they conduct an Environmental Assessment (EA) and, if there are potentially significant environmental impacts, an Environmental Impact Statement (EIS). *See* ECF No. 1 ¶¶ 17-31. The purpose of these environmental reviews is to provide federal agencies

with the information they need to decide whether to move forward. ECF No. 1 ¶¶29-31. Because conversion of the Roxbury warehouse into a mass detention center would overwhelm local sewer and water infrastructure and inflict a range of related environmental harms, an EA and EIS, if properly done, would confirm that the warehouse is unsuitable as a site for a detention center. *See* ECF No. 1 ¶70.

Plaintiffs moved for a preliminary injunction on this basis, seeking to block Defendants from converting the warehouse—which they had initially stated they would accomplish by approximately May 2026—until they completed the full range of required environmental reviews. During the course of briefing on that motion, Defendants represented for the first time that they would not be moving forward with the warehouse conversion until they undertook an EA. The parties then agreed to a stipulated order, which this Court subsequently entered on May 12, 2026, barring Defendants from undertaking any activities at the Roxbury warehouse site for purposes of converting it into an immigration detention facility, except for certain site maintenance and security activities set forth in the Order, unless and until: (i) Defendants conduct an EA and issue an agency decision document based on that EA; and (ii) Plaintiffs have an opportunity to review and challenge that EA and agency decision document in a renewed motion for a preliminary injunction. *See* ECF No. 36 at 3-5. After the Court entered that Order, Defendants stated that they were reconsidering whether to pursue a detention facility in Roxbury at all and

insisted they had not made a decision on whether to do so. *See* ECF Nos. 44, 45, 50. Last week, however, public reports indicated that Defendants had entered into a $31.8 million contract to convert the Roxbury warehouse into a detention center. Only after Plaintiffs asked Defendants about this public report did they acknowledge that they had in fact decided to pursue a detention facility in Roxbury.

In addition, Defendants recently acknowledged—again, only after Plaintiffs repeatedly raised the issue—that they had on multiple occasions in September used the parking lot outside the warehouse site for initial processing of detained individuals before transferring them to another facility. Public reports have raised questions as to whether some of the individuals taken to the Roxbury warehouse site were actually held inside the warehouse. Although Defendants have denied holding individuals inside the warehouse and have represented that they will no longer use the warehouse site in connection with enforcement actions, they still have not answered questions Plaintiffs raised more than three weeks ago about how long and where the detainees were held at the site.

**B. Plaintiffs' Proposed Next Steps**

In light of the language of the May 12 Order, Plaintiffs do not believe that it is necessary to set a schedule for a renewed preliminary injunction motion at this time. The May 12 Order provides that within seven days of Defendants notifying Plaintiffs that they have completed an EA and issued an agency decision document,

the parties must submit a joint status report to the Court "proposing a schedule for future proceedings." ECF No. 36 at 3. At this point, to Plaintiffs' knowledge, Defendants have not issued an EA or related agency decision document. Thus, the procedure set forth in the May 12 Order continues to govern, and the parties can propose a schedule for future proceedings, including any renewed preliminary injunction motion, if and when an EA is completed.

Nonetheless, Plaintiffs have significant concerns about Defendants' compliance with the provisions of the May 12 Order that bars Defendants from undertaking activities to convert the warehouse site into a detention center before an EA is completed. As noted above, public reports indicate that Defendants have entered into a $31.8 million contract to convert the Roxbury warehouse site into a detention center. Defendants apparently entered into this contract before conducting an EA or even notifying the Court or Plaintiffs that they intended to pursue a detention center. After Plaintiffs inquired about the contract, Defendants represented that "money has been obligated for maintenance, design of ICE's preferred alternative, and the NEPA analysis of that design." On November 6, Plaintiffs made a written request to Defendants for a copy of this contract so that they can assess whether Defendants have violated the May 12 order by initiating efforts to convert the facility before completing an EA. *See* ECF No. 51. On November 10, Plaintiffs sent a follow-up request seeking additional clarification about the relevant contract

governing work at the Roxbury warehouse site. Only on November 16—the date of this filing—did Defendants finally commit to Plaintiffs that they would produce the contract. As of the time of this filing, Plaintiffs have not yet reviewed the contract. And Defendants have still not responded to related questions from Plaintiffs about the contract, their use of the warehouse, and the timing of an EA.

Under the terms of the May 12 Order, Defendants may not commit resources to work that would convert the warehouse site into a detention center without first conducting the required environmental reviews. Doing so would undermine the very purpose of the environmental reviews that Plaintiffs seek. NEPA requires federal agencies to take a "hard look" at the project "before committing resources" to the project. *Del. Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Eng'rs*, 685 F.3d 259, 269 (3d Cir. 2012). But if Defendants have already committed resources to converting the facility, then any forthcoming EA will be mere window dressing for a decision that has already been made—subjecting Plaintiffs to a wide range of infrastructure, environmental, and public health harms without the required review.

Plaintiffs therefore have an urgent need for information about Defendants' contracting and other actions taken in connection with the warehouse site, so they can promptly seek appropriate relief from this Court to redress any violations of the May 12 Order. Should Defendants fail to produce the contract, as agreed, or otherwise respond to Plaintiffs' questions related to Defendants' compliance with

the May 12 Order, Plaintiffs will, as appropriate, seek a status conference with the Court.

## II. <u>Defendants' Position</u>

Defendants decided to retain the Roxbury facility. On November 5, 2026, Defendants executed a contract for maintenance, design of ICE's preferred alternative, and the NEPA analysis of that design for the Roxbury facility. The next day, on November 6, Defendants informed Plaintiffs that ICE intends to retain the Roxbury facility and renovate it to some level of detention capacity, among other uses, and will do so in accordance with the process set forth in the Order staying adjudication of Plaintiffs' motion for preliminary injunction, Dkt. No. 36.

Within three hours of Plaintiffs requesting information about the contract for the Roxbury facility, Defendants responded. Plaintiffs later requested a copy of the contract and then immediately filed their November 6, 2026, Status Report informing the Court that they had requested a copy of the contract. Since then, Defendants have been working to respond to Plaintiffs' informal request, which they expect to be able to do in time to submit the status report required by the Court's November 10, 2026 Order, Dkt. No. 52.

Dated: November 16, 2026

**JENNIFER DAVENPORT**
ATTORNEY GENERAL OF NEW JERSEY
By: /s/ Shankar Duraiswamy
Shankar Duraiswamy
*Deputy Solicitor General*
Naima Drecker-Waxman
Yael N. Fisher
Kristen D. Heinzerling
Kristina L. Miles
*Deputy Attorneys General*
25 Market Street
Trenton, NJ 08625
Shankar.Duraiswamy@njoag.gov
(862) 350-5800
*Attorneys for the State of New Jersey*

**MURPHY MCKEON, PC**
By: /s/ James Bryce
James Bryce
901 Route 23 2nd Floor
Pompton Plains, New Jersey 07444
jbryce@murphymckeonlaw.com
(973) 835-0100
*Attorneys for the Township of Roxbury*

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice

/s/ Krystal-Rose Perez
KRYSTAL-ROSE PEREZ
Senior Trial Attorney
Natural Resources Section
150 M Street NE
Washington, DC 20002
202-532-3266
krystal-rose.perez@usdoj.gov
*Attorney for Defendants*