**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STATE OF NEW JERSEY and TOWNSHIP OF ROXBURY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Hon. Jamel K. Semper, U.S.D.J.<br><br>Hon. James B. Clark, U.S.M.J.<br><br>Civil Action No.: 26-02884 |

**DECLARATION OF SARAH A. WEST**

I, Sarah A. West, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1. I am a Senior Advisor and Contracting Officer for the U.S. Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), Office of Acquisition Management (OAQ). I oversee a portfolio of assigned procurement projects and provide support to OAQ leadership, as directed, and have been in this role since January 2025. I have been employed by ICE in various roles since July 2007. In 2003, I was a federal contractor supporting the ICE Office of the Executive Secretariat in supervisory and non-supervisory positions until I became a federal employee in July 2007 as the

Program Manager/Deputy Director of the Executive Secretariat. Between 2009-2011, I twice served as the Acting Director of the Executive Secretariat and also completed internal detail assignments in the Office of Budget and Program Performance and in the Office of the then-Assistant Secretary (now ICE Director) as Special Assistant to the Counselor and to then-Deputy Assistant Secretary (now Executive Associate Director) of Management and Administration. In 2011, I transferred to OAQ as a contract specialist. I supported several divisions and held several supervisory and non-supervisory positions in OAQ. I currently hold an unlimited contracting warrant and Federal Acquisition Certification in Contracting (Professional).

2. WEXMAC IDIQ contract (No. N0002325D0139), awarded by the Department of the Navy, is the parent contract that establishes the general terms and conditions under which ICE may obtain services through individual task orders. Task Order No. 70CDCR27FR0000002, issued under that parent contract, identifies the specific requirements for the Roxbury facility. As the Contracting Officer for Task Order No. 70CDCR27FR0000002, I am responsible for the complete conduct and integrity of the contracting process, including administration of the task order after it is awarded to the successful vendor. As Contracting Officer, I am the only individual authorized to issue changes to this task order.

3. ICE awarded a task order on November 5, 2026, for the ICE-owned permanent structure in Roxbury, New Jersey, Task Order No. 70CDCR27FR0000002. The task order has many components, and it establishes two main substantive sets of tasks for the vendor. The first set is for the vendor to perform maintenance at the facility, to develop a design for the facility for some level of detention capacity along with other potential uses such as training and office space, and to conduct environmental analysis of this design to inform ICE's final decision on the use of the facility. ICE has only committed to paying for the first set of tasks as only this first part of the contract has funds currently obligated against it, in the amount of $31,777,231. The second set of contractual tasks is optional, and ICE is not committed to obligating funds against this set, if it decides not to after consideration of the environmental analysis. If ICE were to decide to obligate the optional part of the contract in full, which would cover five years of operational costs, the total amount of the contract would be $998,285,252.59.

4. The two contract documents that establish this arrangement in particular are the Solicitation/Contract/Order For Commercial Products And Commercial Services, Standard Form 1449 (Rev. 11/2021), No. 0002325D0139 (Exh. 1), and its first attachment, U.S. Department of Homeland Security, Immigration and Customs Enforcement, Performance Work Statement (August 2026), ICE Detention Reengineering Initiative (Exh. 2). The full task order

includes many other documents, including, for example, the Quality Assurance Surveillance Plan (QASP), which covers ICE's right to monitor and inspect the service provider's performance of contract duties; the Personnel Property Operations Handbook, which documents the standard process and procedures for managing government property; the Contract Detention Facilities for ICE Design Standards, which sets nationwide policies for the design of ICE detention facilities; and the 2026 National Detention Standards, which ensures that all detention operations adhere to constitutional standards.

5. As noted above, Task Order No. 70CDCR27FR0000002 is issued for work related to the ICE-owned industrial building in Roxbury Township, New Jersey (Exh. 1 at 1). At the time of execution, the total obligated value on the task order was and remains $31,777,231 (*id*. at 2–3). The purpose of this obligation is to cover Contract Line Item Numbers (CLINs) 0009, National Environmental Policy Act (NEPA) Compliance ($650,000) (*id*. at 6); and CLIN 0010, Transition-In, for maintenance and repair of the facility for four months and design of ICE's proposed action for some level of detention capacity at the facility as well as other uses, such as training and office space ($31,127,231) (*id*. at 7). These CLINs are not optional.

6. Other CLINs are optional. The optional CLINs listed below would apply during the first year of the contract if ICE were to decide to obligate the optional part of the contract after consideration of the environmental analysis:

- CLIN 0001 for Facility Operations and Maintenance for eight additional months in the total amount of $11,132,500 is optional, and it has no money obligated against it (*id.* at 4).
- CLIN 0002A for increasing amounts of initial detention capacity over a six-week period in the total amount of $15,414,230.77 is optional, and it has no money obligated against it (*id.*).
- CLIN 0002B for detention services at full operating capacity in the total amount of $74,502,115.38 is optional, and it has no money obligated against it (*id.* at 4–5).
- CLIN 0003 for Detainee Variable Costs in the amount of $10,276,153.85 is optional, and it has no money obligated against it (*id.* at 5).
- CLIN 0004 for On-Call Stationary Guard Services in the amount of $1,979,183.70 is optional, and it has no money obligated against it (*id.*).

- CLIN 0005 for Monthly Transportation Services for eight months for a total of $2,523,795.91 is optional, and it has no money obligated against it (*id.* at 5–6).
- CLIN 0006 for the Reimbursable Transportation Mile Rate for a total of $27,500 is optional, and it has no money obligated against it (*id.* at 6).
- CLIN 0008 for Full Retrofitting of the Building for a total of $206,539,272.43 is optional, with no money obligated against it (*id.*).

7. In sum, the contract only obligates funds to maintain the facility, develop a design for ICE's proposed use of the facility, and to conduct the necessary environmental analysis required under NEPA. The other work items that could be requested by ICE under this task order to retrofit and operate the facility as a detention center are optional and could not be exercised by ICE prior to the completion of required environmental analysis and the issuance by ICE of a Finding of No Significant Impact (FONSI) or a similar final agency decision document.

8. The Performance Work Statement establishes that once the 90% design for ICE's proposed use of the facility has been submitted to and approved by ICE, "the contractor shall complete all required environmental reviews and

assessments described in Section 10.0: Environmental Compliance" of the Performance Work Statement (Exh. 2 at 15). The Performance Work Statement also establishes that although "[o]n a site-by-site basis, the Government may grant approval for the contractor to begin interior construction or reconfiguration of administrative and office space while environmental review is ongoing," "[e]xterior, interior and infrastructure renovations for housing aliens may not proceed until a [FONSI] is issued" (*id.*). In Section 10.0, the Performance Work Statement then details the full scope of the environmental analysis the vendor is expected to complete to inform ICE's final decision on the use it wishes to make of the property, including the evaluation of utilities infrastructure, the real property itself, and related services (*id.* at 21–22), compliance with environmental planning and historic preservation (*id.* at 22–25), environmental due diligence (*id.* at 25–27), completion of an Environmental Site Assessment Phase II survey and testing of the property if required (*id.* at 27–28), and construction and operations environmental compliance (*id.* at 28).

This declaration is based upon my personal knowledge, reasonable inquiry, and information made available to me in the course of my official duties from information obtained from records, systems, databases, other DHS employees, and/or information portals maintained and relied upon by DHS. I provide this

declaration based on the best of my knowledge, information, belief, and reasonable inquiry.

Executed this 17th day of November 2026.

SARAH A WEST Digitally signed by SARAH A WEST
Date: 2026.11.17 10:22:57 -05'00'

Sarah A. West.
Senior Advisor/Contracting Officer
Office of Acquisition Management
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security